PEOPLE *v.* WEIDEN.

1. CRIMINAL LAW—QUASHING INFORMATION—QUESTIONS REVIEW-ABLE ON ERROR.

On writ of error under Act No. 139, Pub. Acts 1925, to review an order quashing an information for murder on the ground that no murder was shown, and, if shown, there was no evidence charging defendant with its commission, the Supreme Court does not weigh the evidence, but only determines whether there is any evidence support-ing the charge.

2. SAME—HOMICIDE—IN DETERMINING WHETHER OFFENSE COM-MITTED EVIDENCE AGAINST SUSPECTED PERSON NOT CONSIDERED.

In determining whether there was any evidence from which a jury might reasonably find that a murder was com-mitted, consideration of evidence connecting defendant with its commission is not involved.

3. SAME—EVIDENCE OF CRIME SUFFICIENT TO PRESENT QUESTION FOR JURY.

Whether decedent's injuries were received in a fall from basement stairs or feloniously inflicted by some person, *held*, a question for the jury under the evidence.

<hr>

1, 2, 3Criminal Law, 17 C. J. § 3313:

4. SAME—EVIDENCE AGAINST DEFENDANT SUFFICIENT TO WARRANT
   HOLDING FOR TRIAL.
   Evidence connecting defendant with the commission of
   murder, *held*, sufficient to warrant holding him for trial.

Error to superior court of Grand Rapids; Verdier
(Leonard D.), J.   Submitted April 15, 1927.   (Dock-
et No. 142.)   Decided June 6, 1927.

John G. S. P. Weiden was informed against for
murder.   From an order quashing the information,
the people bring error.   Reversed and remanded.

*William W. Potter,* Attorney General, *Earl W. Mun-
shaw,* Prosecuting Attorney, and *Robert J. Quail,* As-
sistant Prosecuting Attorney, for the people.

*Cornelius Hoffius,* for appellee.

WIEST, J.   Defendant was charged, before a magis-
trate, with murder of Stephen Weiden, his adoptive
father.   An examination was had, and the magistrate
held defendant to answer to an information, in the
superior court of Grand Rapids, charging him with
murder.   At the close of the examination, defendant
moved for his discharge on the grounds that no murder
was shown, and, if shown, there was no evidence
charging him with its commission.   The magistrate
denied the motion.   Arraigned in the superior court,
on an information charging murder, defendant stood
mute, a plea of not guilty was entered by the court,
and a motion made by defendant to quash the in-
formation, for the reasons urged before the magistrate.
The motion was granted and defendant discharged.
The people review by writ of error under Act No. 139,
Pub. Acts 1925.

The prosecution contends the court was in error in
holding that no murder was shown by evidence at the
examination, and also in holding there was no evidence

---

⁴Criminal Law, 16 C. J. § 598.

justifying the magistrate in finding probable cause to believe defendant committed the alleged murder.

We have before us the evidence taken at the examination, and from it must determine whether defendant should stand trial. This involves two questions. (1) Was there any evidence from which a jury might reasonably find that Stephen Weiden was murdered? (2) If so, was there sufficient evidence to hold defendant for trial? The statute permitting writ of error in behalf of the people is new, and it must be understood that we do not weigh the evidence but only determine whether there is any evidence supporting the charge. The first question admits of no consideration of facts involved in the second. Was there evidence tending to show a murder?

Thanksgiving eve, 1923, Stephen Weiden, aged 54, dealer in hides, was found in the basement of his place of business in the city of Grand Rapids, lying on the cement floor in a pool of blood, and bearing on his person many severe wounds, bruises, and contusions. He was removed to a hospital and died there three days later without becoming conscious. The people claim the injuries to his person evidenced a felonious assault. This claim is supported by the testimony of the physician who made an examination of the person of Mr. Weiden at the hospital.

The physician testified that he found Mr. Weiden unconscious, breathing rather stertorous, with rapid pulse and groaning; that he had blood all over his clothing and in his nose and left ear; had multiple lacerations of the scalp over the left half of the skull, the back half of the skull about two or three inches and some smaller; had four or five lacerations on the back and a deep cut over the left temple; his eye was swollen on the left side and on the left side of the eye was a bruise to the eyelid and the lips were bruised, showing blood under the skin; had multiple

bruises on the arms, the left forearm about the elbow, bruises on both knees and legs and he had. considerable swelling on the left breast area and a fracture of the fourth and fifth ribs; he was bleeding from the mouth, ears, and nose, and his face was covered with blood; that the next day there was some blue area at the back of the left hip, left thigh area and also the skin on the back. The physician determined the cause to have been some severe injury, blows or something of that sort, and was of the opinion that Mr. Weiden could not have inflicted the injuries on himself, although he thought it might be possible that the injuries could have been caused by a fall, but not probably by a simple fall. Death was occasioned by traumatic cerebral hemorrhage.

Considering the nature and extent of the injuries and the testimony of the physician, we think it is for a jury to say whether such injuries were received in a fall from the basement stairs or feloniously inflicted by some person. We have purposely omitted any reference to testimony tending to show an accident.

The basement in which Mr. Weiden was found has an alley at the west side. One basement window, with lights of glass 14 by 18 inches, was broken out together with the cross piece between the lights.

Was there sufficient testimony to hold defendant for trial? If Mr. Weiden was murdered robbery was evidently not the motive, as his gold watch and $180 in money were found on his person at the hospital. Defendant was taken by the Weidens when he was a baby and adopted by them when he was about six years old. Mr. Weiden left an estate of about $75,000. Before the arrival of the police a witness testified that the wife of the accused was at the door of the building, rattling the door and calling to her husband to let her in, and that defendant was rolling on the floor, but finally opened the door. Another witness testified

that, earlier in the evening, he saw defendant enter the alley alongside of the building. Lillian Hunt, a school girl, testified that defendant and another man came to her father's home one evening and there defendant said: "There was two Steve Weidens; one Steve Weiden killed the other Steve Weiden, and there's only one left;" that his companion said: "Shut your damned mouth;" and defendant said: "I am not afraid; Mr. and Mrs. Hunt are friends of mine, and they wouldn't tell on me anyway." Priscilla Hunt, mother of Lillian, testified that she heard defendant say: "There was two Steve Weidens and one Steve Weiden was"—and because the little children were making a noise she did not hear the rest, except "One Steve Weiden left." She heard his companion say: "Shut your damned mouth; don't tell all you know;" and defendant replied: "I don't care what I say here, Mr. and Mrs. Hunt wouldn't give him away."

Again we repeat, we do not weigh the testimony nor pass on the credibility of the witnesses. We think a jury should pass upon the charge made against defendant.

The order quashing the information and discharging defendant is set aside and the case remanded with direction to reinstate the information.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, and McDONALD, JJ., concurred. CLARK, J., did not sit.