PEOPLE v MARTIN

1. COURTS—COURT OF APPEALS—JURISDICTION—STATUTES—COURT RULES.

The Court of Appeals has jurisdiction on appeals from all final judgments of the circuit courts, court of claims, and recorder's court, except judgments on ordinance violations in the traffic and ordinance divisions of recorder's court, and such other judgment or interlocutory orders as the Supreme Court may by rule determine (MCLA 600.308).

2. COURTS—COURT OF APPEALS—APPEALS—APPEALS AS OF RIGHT—JUDGMENTS—FINAL JUDGMENTS—STATUTES—REVISED JUDICATURE ACT—COURT RULES—APPEALS BY LEAVE.

All appeals to the Court of Appeals from final judgments or decisions permitted by the Revised Judicature Act shall be a matter of right; all other appeals from other judgments or orders to the Court of Appeals permitted by statute or Supreme Court rule shall be by right or by leave as provided by the statute or the rules promulgated by the Supreme Court (MCLA 600.309).

3. COURTS—COURT OF APPEALS—JURISDICTION—STATUTES—CONSTITUTIONAL LAW—COURT RULES.

The jurisdiction of the Court of Appeals is provided by the

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 4 Am Jur 2d, Appeal and Error § 4 *et seq.*

5 Am Jur 2d, Appeal and Error § 702 *et seq.*

[4, 5] 73 Am Jur 2d, Statutes §§ 22, 322–324.

[5] Presumption that, in re-enacting statute, legislature adopted previous judicial construction thereof, as applied to construction by trial or intermediate appellate court. 146 ALR 923.

[6] 73 Am Jur 2d, Statutes §§ 187–190.

[7] 73 Am Jur 2d, Statutes § 392 *et seq.*

[8] 4 Am Jur 2d, Appeal and Error § 268.

Constitutionality of statute permitting appeal by state in criminal case. 157 ALR 1065.

[9] 30 Am Jur 2d, Evidence §§ 1140, 1173.

40 Am Jur 2d, Homicide §§ 4, 284, 285.

[10] 40 Am Jur 2d, Homicide § 54.

[11] 40 Am Jur 2d, Homicide §§ 145, 151.

[12] 21 Am Jur 2d, Criminal Law §§ 3, 135 *et seq.,* 440 *et seq.*

general residual grant of a section of the Revised Judicature Act, and by a variety of other statutes, some of which preceded the adoption of the Constitution of 1963, the Revised Judicature Act and the residuary grant section thereof (Const 1963, art 3, § 7; GCR 1963, 801.1; MCLA 600.308).

4. STATUTES—LEGISLATURES—COURTS—SUPREME COURT DECISIONS—LEGISLATIVE ACQUIESCENCE—INTERPRETATION OF STATUTES.

Legislative acquiescence in the Supreme Court's interpretation of a statute is assumed where the Legislature does not react to the interpretation.

5. STATUTES—LEGISLATURES—COURTS—SUPREME COURT DECISIONS—INTERPRETATION OF STATUTES—REENACTED STATUTES—KNOWLEDGE—INTENT.

Legislative knowledge of a Supreme Court interpretation of a statute and legislative intent that the reenacted statute is to carry the Supreme Court's interpretation with it are assumed where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the Legislature.

6. STATUTES—CONSTRUCTION OF STATUTES—IN PARI MATERIA.

Statutes dealing with the same matter are *in pari materia* and must be construed together to reach a harmonious result; it is important that the evident intent and meaning of the statutes as well as the force of them should be preserved.

7. STATUTES—COURTS—SUPREME COURT—INTERPRETATION—AMENDMENTS—PUBLICATION—CONSTITUTIONAL LAW.

In the absence of specific legislative intent to amend or alter other statutes the Supreme Court will treat the other statutes as in existence and interpret them as they are written unaffected by subsequent statutes; if it is intended to amend or alter those other statutes then it should be stated specifically and those statutes must be amended or altered directly and republished as contemplated by a section of an article of the Michigan Constitution (Const 1963, art 4, § 25).

8. CRIMINAL LAW—APPEAL AND ERROR—APPEALS BY THE PEOPLE—LEAVE TO APPEAL—STATUTES.

Appeals by the people in criminal cases require leave and are restricted by and limited to the provisions of statute (MCLA 770.12).

9. HOMICIDE—FELONIOUS HOMICIDE—MANSLAUGHTER—CORPUS DE-
LICTI.

The corpus delicti of felonious homicide, including manslaughter,
consists of evidence of a death and of a criminal agency as its
cause.

10. HOMICIDE—MANSLAUGHTER—VOLUNTARY MANSLAUGHTER—INVOL-
UNTARY MANSLAUGHTER—COMMON LAW—MALICE.

At common law manslaughter is divided into the general categor-
ies of voluntary and involuntary manslaughter; both categories
proscribe the unlawful killing of another without legal justifica-
tion or excuse and are distinguished from the higher crimes of
murder by the absence of malice.

11. HOMICIDE—MANSLAUGHTER—DEFENSES—SELF-DEFENSE—PROOFS—
PROSECUTOR'S BURDEN.

The prosecution in a manslaughter case need not disprove self-
defense where there are no facts which raise the issue.

12. CRIMINAL LAW—DEFENSES—TRIAL—PRELIMINARY EXAMINATION.

Defenses of a criminal defendant should be presented at trial; a
preliminary examination is not a trial.

Appeal from Recorder's Court of Detroit, George
W. Crockett, Jr., J. Submitted Division 1 February
6, 1975, at Detroit. (Docket No. 19563.) Decided
March 12, 1975. Leave to appeal denied, 394 Mich
813.

Olivet Martin was charged with manslaughter.
Defendant's motion to quash the information
granted and defendant discharged. The people ap-
peal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, *Patricia J. Boyle,*
Principal Attorney, Research, Training and Ap-
peals, and *Timothy M. Kenny,* Assistant Prosecut-
ing Attorney, for the people.

*Francis Zebot,* Assistant State Appellate Defender, for defendant.

*Amicus Curiae:* Prosecuting Attorneys Appellate Service, by *Edward R. Wilson.*

Before: McGREGOR, P. J., and J. H. GILLIS and QUINN, JJ.

J. H. GILLIS, J. The defendant Olivet Martin was arrested in the City of Detroit and charged with the crime of manslaughter. MCLA 750.321; MSA 28.553. She was bound over on that charge on November 20, 1973 following preliminary examination. Defendant filed a motion to quash the information and discharge the defendant on the ground that the evidence at the preliminary examination indicated that the people had failed to show that Ms. Martin had not acted in self-defense. Recorder's Court Judge George W. Crockett, Jr., after hearing arguments, granted the motion and discharged defendant on February 28, 1974. The people prepared and filed in this Court a timely claim of appeal, on the basis of *People v Blachura,* 390 Mich 326; 212 NW2d 182 (1973). That claim of appeal was accepted and filed, improvidently we believe.

On April 19, 1974, this Court on its own motion requested the parties to brief the question of whether or not the people are entitled to an appeal as of right from such an order. The Prosecuting Attorneys Appellate Service was also invited to file a brief amicus curiae on the question. Both parties and the PAAS have filed such briefs, we have had the benefit of vigorous oral argument, and we conclude that the people do not have an appeal as of right from such an order.

A brief history of this question is necessary in

order to explain our reasoning. At the common law in Michigan, the people were not permitted to appeal any orders or judgments in criminal cases. *People v Ballots,* 252 Mich 282, 283; 233 NW 229 (1930). By 1917 PA 159, § 1(a), the people were granted the right to seek a writ of error in the Supreme Court from certain orders "based upon the invalidity or construction of [a] statute * * * ".

"This language was incorporated in the Code of Criminal Procedure (1927 PA 175, ch X, § 12; 1929 CL 17366) and has been carried forward to the present without substantive change. In 1941 this provision of the Code of Criminal Procedure was amended by adding the following language, which, together with the former language, is now MCLA 770.12; MSA 28.1109:

" '(c) From the decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy, or from any other order of the court relative to admission of evidence or proceedings had or made at any time before the defendant is put in jeopardy.' " People v Blachura, *supra,* 390 Mich 341–342; 212 NW2d 182, 188, opinion of Justice LEVIN.

Section 3 of ch X of the Code of Criminal Procedure, MCLA 770.3; MSA 28.1100, provides:

"Writs of error in criminal cases shall issue only in the discretion of the supreme court or any justice thereof, on proper application therefor."

We have held that "[a]lthough Const 1963, art 1, § 20, removes the accused from the restrictions of CL 1948, § 770.3 (Stat Ann 1954 Rev § 28.1100) and grants a right of appeal, appeals by the [people] still require leave and are restricted by the provisions of CL 1948, § 770.12 (Stat Ann 1954 Rev § 28.1109)". *City of Portage v Timmerman,* 11

Mich App 498, 499; 161 NW2d 442 (1968). See also, *People v Harry James Smith,* 16 Mich App 606; 168 NW2d 449 (1969), *People v Abess,* 17 Mich App 617; 170 NW2d 264 (1969), *People v Price,* 23 Mich App 663; 179 NW2d 177 (1970), *Wayne County Prosecutor v Recorder's Court Judge,* 27 Mich App 251; 183 NW2d 333 (1970), *Wayne County Prosecutor v Wayne Circuit Judge,* 27 Mich App 257; 183 NW2d 336 (1970), *People v Gebarowski,* 47 Mich App 379; 209 NW2d 543 (1973), and *People v Brundage,* 381 Mich 399, 402–403; 162 NW2d 659; 29 ALR3d 881 (1968). We adhere to that statement of law.

The people and the PAAS rely heavily upon *People v Blachura, supra.* We feel that *Blachura,* properly analyzed, does not control the question presented here.

Leon Blachura was convicted in Oakland County Circuit Court of five counts of perjury. The court, on motion of defendant, set aside all five verdicts, granted new trials as to two counts, and dismissed three counts with prejudice. The people sought leave to appeal, and this Court granted leave to appeal on April 25, 1972. Defendant sought leave to appeal in the Supreme Court from the order granting leave to appeal, presenting only the " 'narrow issue of whether or not the Court of Appeals has jurisdiction' in this matter". *People v Blachura, supra,* 390 Mich 331–332; 212 NW2d 182, 183. The Supreme Court granted leave to settle that question. 388 Mich 751. All seven Justices agreed that the narrow question presented must be answered in the affirmative, and the order of this Court granting leave to appeal was affirmed. 390 Mich 326, 337–338.

The two opinions in *Blachura,* while agreeing upon the answer to the narrow question presented,

disagree upon other questions, which we take to be obiter dicta. See *Hett v Duffy,* 346 Mich 456, 461–462; 78 NW2d 284 (1956), and *People v Garland,* 393 Mich 215; 224 NW2d 45 (1974), concurring opinion of Justice LEVIN.

### *Jurisdiction of the Court of Appeals*

The jurisdiction of the Court of Appeals is provided by statute. Const 1963, art 6, § 10; *People v Blachura, supra, People v Milton,* 393 Mich 234; 224 NW2d 266 (1974), 1964 PA 281; MCLA 600.308; MSA 27A.308. RJA 308 is a general statute conferring on the Court of Appeals jurisdiction in both civil and criminal cases. Const 1963, art 1, § 20; *People v Milton, supra.* RJA 308 by its subsection (2) indicates that there are other judgments or interlocutory orders, over which the Court of Appeals may be granted appellate jurisdiction by court rule.

RJA 309 provides:

"All appeals to the court of appeals from final judgments or decisions permitted by this act shall be a matter of right. *All other appeals from other judgments or orders to the court of appeals permitted by statute or supreme court rule shall be by right or by leave as provided by the statute or the rules promulgated by the supreme court.* "(Emphasis supplied.)

If sections 308 and 309 are read together, it quite clearly appears that the "[a]ll final judgments" of section 308 is a general residuary source of jurisdiction. Section 308 is not the only source of Court of Appeals jurisdiction.

Const 1963, art 3, § 7, provides:

"The common law and the statute laws now in force,

not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

GCR 1963, 801.1, provides:

"In all cases in which review by the Supreme Court or by the Court of Appeals is authorized by law, review shall be had by appeal to the Court of Appeals, subject to further appeal to the Supreme Court as provided by these rules. This rule refers only to the court and method of review and does not restrict, enlarge or change the right or scope of review provided by law, except as explicitly set out in these rules."

GCR 1963, 16, provides:

"Rules of practice set forth in any statute, not in conflict with any of these rules, shall be deemed to be in effect until superseded by rules adopted by the Supreme Court."

Court of Appeals jurisdiction is provided by many diverse statutes. 1966 PA 261, § 6; MCLA 46.406; MSA 5.359(6), provides for review of county apportionment plans in the Court of Appeals on petition of any registered voter. *Apportionment of Huron County Board of Supervisors,* 12 Mich App 326; 163 NW2d 30 (1968), *Apportionment of Sanilac County Board of Supervisors,* 12 Mich App 330; 162 NW2d 913 (1968), *In re Apportionment of Allegan County Board of Supervisors*—1968, 13 Mich App 692; 164 NW2d 665 (1968).

1965 PA 379, as amended by 1965 PA 397, provides for review in the Court of Appeals from orders of the Employment Relations Commission concerning public employees. *Labor Mediation Board v Tuscola County Sheriff,* 25 Mich App 159; 181 NW2d 44 (1970), *Michigan State University*

*Board of Trustees v State Labor Mediation Board,* 381 Mich 44; 158 NW2d 873 (1968), *Michigan Employment Relations Commission v Reeths-Puffer School District,* 391 Mich 253; 215 NW2d 672 (1974).

1969 PA 317, § 861; MCLA 418.861; MSA 17.237(861) provides for appeal of Workmen's Compensation Appeal Board decisions directly to the Court of Appeals. *Evans v United States Rubber Co,* 379 Mich 457; 152 NW2d 641 (1967). Const 1963, art 6, § 28, provides for "direct review" from such decisions but leave to appeal may be required by court rule. *Evans v United States Rubber Co, supra.*

1939 PA 176, as amended by 1965 PA 282, the mediation of disputes act, requires the Court of Appeals to entertain petitions for review of Employment Relations Commission determinations. *Labor Mediation Board v National Music Camp,* 383 Mich 518; 176 NW2d 588 (1970), MCLA 423.23; MSA 17.454(25).

1972 PA 344, the Agricultural Marketing and Bargaining Act, in section 23, MCLA 290.723; MSA 12.94(123), provides for review in the Court of Appeals of all committee awards.

1973 PA 186, The Tax Tribunal Act, section 53, MCLA 205.753; MSA 7.650(53), provides for an appeal as of right to the Court of Appeals from all final orders and decisions of the tribunal, and appeals by leave for all other orders.

Prior to the passage of 1973 PA 186, appeals from final orders of the State Tax Commission came directly, by leave to appeal, to the Court of Appeals. *Republic Development Corp v State Tax Commission,* 38 Mich App 166; 195 NW2d 923 (1972), *Mistele v State Tax Commission,* 43 Mich App 244; 204 NW2d 242 (1972).

1939 PA 122, as amended, the Dentistry Act, provides in its section 19, MCLA 338.219; MSA 14.629(19), for review in the Supreme Court, which via GCR 1963, 801.1, devolves upon the Court of Appeals.

This list is by no means complete. It only serves to show that the jurisdiction of this Court has been provided "by law" by a variety of statutes.

### Present Validity of the Code of Criminal Procedure

As we have noted above, the jurisdiction of this Court is provided by the general residual grant of RJA 308, and by a variety of other statutes, some of which preceded the adoption of the Constitution of 1963, the RJA and § 308. Const 1963, art 3, § 7; GCR 1963, 801.1.

It is a well established principle of statutory construction that when the Michigan Supreme Court has given an interpretation to a statute with no reaction from the Legislature, it is assumed that there is legislative acquiescence in that interpretation. *Smith v City of Detroit,* 388 Mich 637, 650; 202 NW2d 300 (1972). Furthermore, "where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the legislature, it may be assumed that the legislature acted with knowledge of the Court's decisions and that the legislature intended the reenacted statute to carry the Court's interpretation with it". (Emphasis deleted.) *Smith v City of Detroit, supra,* 650–651, where *Brekon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970), is quoted. See also, *In re Blanchard Estate,* 391 Mich 644, 658; 218 NW2d 37 (1974), dissenting opinion, and authorities cited therein.

Another pertinent rule is that statutes dealing with the same matter are *in pari materia* and must be construed together to reach a harmonious result. "It is important that the 'evident intent and meaning' of the two statutes as well as 'the force of both' should be preserved." *Borden, Inc v Department of Treasury,* 391 Mich 495, 523; 218 NW2d 667 (1974).

The Michigan Supreme Court recently announced that, "[i]n the absence of specific legislative intent to amend or alter other statutes the Michigan Supreme Court will treat them as in existence and interpret them as they are written unaffected by subsequent statutes; if it is intended to amend or alter those other statutes then it should be stated specifically and those statutes must be amended or altered directly and republished * * * ". *Alan v Wayne County,* 388 Mich 210, Syllabus 34; 200 NW2d 628 (1972).

The Supreme Court in 1956 decided the case of *People v Stanley,* 344 Mich 530, 540; 75 NW2d 39 (1956), which held, in a much publicized opinion, that the Judicature Act was "obviously intended by the legislature to apply to the practice and procedure in civil cases separate from that in criminal cases".

*Stanley* has recently been reversed by *People v Edgar Milton,* 393 Mich 234; 224 NW2d 266 (1974), but it was unquestioned in 1964. With the above rules in mind, we can only conclude that the Legislature in 1964 was aware of *People v Ballots,* 252 Mich 282; 233 NW 229 (1930), and its progeny (see *People v Blachura,* 390 Mich 326, 335, fn 2; 212 NW2d 182 [1973]), was aware of *People v Stanley, supra,* was aware of Const 1963, art 3, § 7, was aware that the various provisions concerning criminal procedures were to be found in numerous

places including the Code of Criminal Procedure
and the General Court Rules, and that the legisla-
tive intent in providing RJA 308 was to enact a
general residual source of jurisdiction for the
Court of Appeals, without any intention to repeal
the pertinent sections of the Code of Criminal
Procedure. We echo Justice LEVIN's comment from
his opinion in *Blachura, supra,* 340:

"Until today no one—including prosecutors—has ever
suggested that the Court of Appeals may entertain an
appeal by a prosecutor from every final judgment and,
inferentially, from every other judgment, order, act or
failure to act."

We repeat what was said in 1970 in *Wayne
County Prosecutor v Recorder's Court Judge,* 27
Mich App 251, 255; 183 NW2d 333 (1970):

"Additionally, the Michigan Legislature has refused
to extend the present scope of review allowed to the
people, despite the recent introduction of several bills to
broaden appeals by the people."

Our Clerk has noted in his 1973 Annual Report,
56 Mich App xxxviii, "Ironically, within less than
a month before the Supreme Court's decision [in
*Blachura],* the Senate Judiciary Committee voted
not to report out Senate Bill No. 658, which repre-
sented the annual legislative attempt to secure
appeals as of right on behalf of the people".

With these considerations in mind, we conclude
that appeals by the people require leave and are
restricted by and limited to the provisions of
MCLA 770.12; MSA 28.1109.

In the interest of justice and in order to forestall
a delay of the hearing on the merits of the case,
the Court, on its own motion, treats the claim of

appeal as an application for leave to appeal, which we herewith grant, and, for reasons hereinafter set forth, we determine that the trial judge's order dismissing the case and discharging defendant should be reversed.

Appellant's argument proceeds as follows: A Recorder's Court Judge may grant a motion to quash an information, *People v Cason,* 387 Mich 586; 198 NW2d 292 (1972), but his power is qualified. In order to grant such a motion he must find that the magistrate abused his discretion in binding defendant over, *People v Paille #2,* 383 Mich 621; 178 NW2d 465 (1970). The magistrate must be presented with evidence establishing that a crime was committed and probable cause that the defendant committed the crime. *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933).

The corpus delicti of manslaughter is established by showing (1) a dead body, and (2) an unnatural cause of death. The evidence is reviewed and concluded:

"The factual issue of self-defense was not resolved by the magistrate. His unwillingness to resolve the issue was not error, however. The Michigan Supreme Court has long held that an examining magistrate need not resolve all factual issues (such as self-defense) but may draw a conclusion adverse to the defendant and leave final resolution of the factual issue to the jury. *People v Weiden,* 239 Mich 169; 214 NW 120 (1927). Appellant submits that the examining magistrate correctly left the factual issue of self-defense for the jury to decide."

Appellee presents a lengthy and involved argument, which argues essentially that the basis of Judge Crockett's action was "not based upon a requirement that the prosecution disprove the affirmative defense of self-defense", but was rather

based upon the argument that "the prosecution had failed to carry its burden to establish that a crime had been committed"; and Judge Crockett "actually ruled upon appellee's contention that in order to establish a crucial element of manslaughter, *i.e.,* the *unlawful* killing of another *without* legal justification or excuse, * * * the prosecutor necessarily had to offer supporting evidence which would negate an inference that the homicide was excusable". In support of this argument, defendant spins an impressive conglomeration of case law, testimony and argument.

Let us look first at the testimony presented at the preliminary examination. It was stipulated at the beginning of the transcript that:

"if the Medical Examiner Doctor George Russanow were present here, he would testify that the body of John Mullins was identified to him by Mr. Floyd Garrett, and that the deceased was found to have died of a gunshot wound to the back, with penetration of the vital organs, and bleeding; and second, a through and through gunshot wound of the upper left back, which may not have been fatal.

"There is no evidence of close range firing noted on the skin around the wound entrances.

"The deceased had been consuming alcoholic beverages prior to the time of his death, and the blood alcohol content showed .9 percent."

Patrolman Fogarty testified briefly on direct as follows:

"We received a radio run that there had been a shooting. * * * We observed the deceased lying at the bottom of the stairs on his back, and we then followed the trail of blood which was there, to the top of the stairs. * * * We knocked on the door, and the door of the apartment was answered by the defendant. * * *

We asked her if she knew anything about the shooting, and she stated that she had shot the man."

On cross-examination, he testified as follows:

"*Q.* And when you saw her what was her physical condition?

"*A.* Well she seemed as though she was under a great amount of strain at the time. * * * Oh, she was suffering from a cut on her face, and I believe it was on her left side at the mouth.

* * *

"*A.* Yes, sir, I believe her son had called the police.

* * *

"*A.* Yes, we did [advise her of her constitutional rights], after she had stated that she had shot him.

"*Q.* And did she tell you how the shooting had transpired?

"*A.* Yes, sir, she did.

"*Q.* And did she give you any history of the relationship between herself and the deceased?

"*A.* Well she told us that she had been having trouble with the man recently.

"*Q.* Did she indicate to you that she had also suffered physical beatings and had had problems with the deceased since 1953?

"*The Court:* Counsel, I think we have enough on the record now for probable cause."

Defense counsel presented his argument as follows:

"*Mr. Feinberg:* Your Honor please, other than the fact that we have the fact that this man died of gunshot wounds, we don't have anything at all as that which transpired.

"Further, your Honor, I don't believe the prosecutor has shown that the shooting was not one that was of a justifiable nature. Your Honor, we don't have that here at all, but all we have is the crime as alleged, and

killing someone is not necessarily a crime unless it is shown to be against the law, because there are certain killings which are justifiable, such as in self-defense, and the mere statement of the defendant of having stated to the officer that 'I killed him', and that, along with the defendant having cuts on her mouth, I don't believe that there is sufficient evidence here upon which to bind the defendant over for trial."

The people replied:

"However, this man, the deceased, was shot in the back, and we have established the evidence of the shooting and the statement by this woman that she shot him, and I believe that is sufficient evidence upon which to bind the defendant over for trial on the charge of manslaughter, your Honor."

Judge Del Rio agreed and defendant was bound over on the charge. Defendant's motion to quash was based upon a very narrow ground:

"That the prosecution put in evidence what defense counsel contends is not sufficient to establish that a crime was committed."

Judge Crockett stated the issue in the same way. "He contends that the evidence before the examining magistrate was insufficient to support a finding that the crime of manslaughter had been committed."

Argument on the motion proceeded as follows:

"*Mr. Feinberg:* Nothing more than as I allege in my motion, that I don't believe the elements have been shown properly.

"*The Court:* What element is it you feel was not shown?

"*Mr. Feinberg:* I don't believe that the illegal death

was shown—of manslaughter. Manslaughter is an illegal death committed by someone.

"In this particular case, the police officer arrived at the scene, saw a dead body in the hall, knocked on the door, said, 'What happened?' A woman said, 'I shot him'. Period.

"That's the only thing in the examination transcript. I don't believe that is sufficient to show that an illegal death occurred. True. That's all there is. It could have been, 'I accidentally shot him'. 'I shot him in self defense'.

"No questions were asked further of the officer. 'Well, what did she say?' You know, 'What did the woman say was the cause of the shooting?'

"All you have is someone dead; someone saying, 'I did it'. I don't think from there you therefore have a homicide or an illegal death. I think there has to be something more.

*"The Court:* Does the prosecution wish to be heard?

*"Mr. Smargon:* Only to say, Your Honor, that the things that Mr. Feinberg has mentioned, such as an accident or self-defense or mistake, or whatever could be an explanation for the shooting, are all defenses that should properly be brought before a jury or a judge acting as a fact-finder, but that the evidence—

*"The Court:* I don't think you mean that, do you?

*"Mr. Smargon:* With the case that we have here—

*"The Court:* Self-defense, you contend, is a matter of defense? With the burden on the defendant to prove that he or she acted in self-defense?

*"Mr. Smargon:* No, of course not, Your Honor. The people always have the burden, in fact, have a burden to show that he did not act in self-defense.

*"The Court:* But I think that's what Mr. Feinberg is saying, that you did not present any evidence from which the examining magistrate could conclude that the defendant in this case did not act in self-defense."

Judge Crockett reasoned as follows:

*"The Court:* When there is a jury that I instruct in a

homicide case, I tell them that initially there are five elements they have to find before they can conclude that a felonious homicide was committed. The first one is that the decedent was once alive and is now dead. The second one is that the defendant caused his death. The third one is that the defendant intended to cause his death. And the fourth one is that the defendant did not act—it's really the fifth one—did not act in self-defense.

"And you've got to have a record that establishes each of those elements. And if the record itself does not establish that the defendant did not act in self-defense, you can't even conclude that you have a felonious homicide which is the lowest degree of homicide. Therefore I don't see how you could conclude that manslaughter was committed.

"In this case the possibility of self-defense is heightened by some testimony to the effect that the woman gave the appearance of having been battered. She was bleeding—

*"Mr. Feinberg:* She was bleeding from the mouth.

*"The Court:* —from the mouth or from the nose at the time, which would seem to suggest that if she did shoot him, it was following some kind of altercation, which certainly would put the prosecution on notice that there was a possibility of a claim of self-defense in this case.

"No. I think I'll have to sustain the defense motion. The motion is granted."

Judge Crockett adjourned the case until January 28, 1974 to give the people a chance for further testimony. The prosecutor stated the purpose of the adjournment as follows: "[Y]ou sent this case back for further examination to negate the issue of self-defense that was apparently raised by the defense in the prosecutor's case at the preliminary examination". He then argued that the fact that the deceased was shot in the back would seem to negate self-defense, and declined a chance for further examination. Judge Crockett then ruled:

"I think I'm going to give you a chance to take this one up. If you have no further testimony, I am ruling that there wasn't enough to bind him [sic] over. The motion to quash is granted. The case is dismissed. He [sic] is discharged."

"A preliminary examination is in no sense a trial to determine guilt or innocence. It serves the limited purpose of a factual presentation from which the examining magistrate determines whether a crime has been committed and whether there is probable cause to believe that the accused committed it. * * * The examining magistrate's determination as to probable cause will not be disturbed unless an abuse of discretion is found. * * * 'It is not the function of the circuit court to second-guess the district court. The findings of the examining magistrate are to be set aside only when there is an abuse of discretion.' " *People v Gaines,* 53 Mich App 443, 446–447; 220 NW2d 76, 78 (1974).

The corpus delicti of "felonious homicide", including manslaughter, consists of evidence of a death and of a criminal agency as its cause. *People v Allen,* 39 Mich App 483, 498; 197 NW2d 874, 882 (1972), *dissent adopted,* 390 Mich 383; 212 NW2d 21 (1973).

"At common law manslaughter is divided into two general categories—voluntary and involuntary manslaughter. * * * Both categories of the offense proscribe the unlawful killing of another without legal justification or excuse and are distinguished from the higher crimes of murder by the absence of malice." *People v Townes,* 391 Mich 578, 589; 218 NW2d 136, 140 (1974).

Measuring these principles against the facts of this case we have the following: the deceased was found with two bullets in his back at the foot of the stairs near defendant's apartment. This by itself would be enough to conclude that a greater crime of murder was committed. The determina-

tion of the corpus delicti is the first step, which precedes the inquiry into the question of who was the criminal agency. The second element is completely supplied by defendant's voluntary statement that she shot the deceased. The facts alluded to concerning beatings the deceased had inflicted upon defendant would indicate provocation, not self-defense. Provocation must be shown to reduce this crime to manslaughter. Only one witness was presented at the preliminary examination. If the killing was excusable, defendant could have introduced testimony to that end, but did not. It is not the law that the people must disprove self-defense where there are no facts which raise the issue. A preliminary examination is not a trial. As plaintiff points out, *People v Weiden,* 239 Mich 169, 172; 214 NW 120, 121 (1927), is very much on point. Defenses should be presented at trial.

The order of the trial court dismissing the case is set aside and the case is remanded to Recorder's Court for further proceedings consistent with this opinion.