LAKE CARRIERS' ASSOCIATION v MACMULLAN

Docket No. 78-1648. Submitted February 15, 1979, at Lansing.—Decided June 25, 1979.

The Lake Carriers' Association and others brought an action seeking a declaratory judgment and an injunction against enforcement of the Michigan Watercraft Pollution Control Act of 1970. Defendants were Ralph A. MacMullan, Director of the Department of Natural Resources, Ralph W. Purdy, Executive Secretary of the Water Resources Commission, the Department of Natural Resources, the Water Resources Commission, and Frank J. Kelley, Attorney General. The Dominion Marine Association was allowed to intervene as a plaintiff. The Mackinac Circuit Court, Martin B. Breighner, J., determined that the provisions of the Watercraft Pollution Control Act regulating the treatment and discharge of sewage on vessels on the Great Lakes were ambiguous, and construed the act as prohibiting only the discharge of sewage which is not treated in accordance with applicable Federal standards. A judgment was entered enjoining the defendants from enforcing the pertinent provisions of the act. The Attorney General appeals. *Held:*

The Watercraft Pollution Control Act is ambiguous and is therefore subject to judicial interpretation. The act is to be considered *in pari materia* with other statutes and with Federal law and treaties. When so considered, the act is construed to ban only the discharge of sewage which is not treated in accordance with Federal standards.

Affirmed.

1. STATUTES — CONSTRUCTION OF STATUTES — AMBIGUOUS STATUTES.

Construction or interpretation of a statute is not warranted if the statute in question is unambiguous on its face; however, where an ambiguity is found it is the duty of the court to consider the intent of the Legislature.

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146, 194, 195.
[2] 73 Am Jur 2d, Statutes §§ 275, 276.
[3, 4] 61 Am Jur 2d, Pollution Control §§ 53, 78.

2. STATUTES — CONSTRUCTION OF STATUTES — AMBIGUOUS STATUTES.

> A court, in construing a vague or ambiguous statute, must give the statute a reasonable construction which will best effect its purpose, interpreting the statute as a whole, giving meaning to all of its provisions, and producing a harmonious and consistent result in construing a statute capable of more than one meaning, the court must also look to other statutes *in pari materia* in order to determine the evil sought to be remedied by the Legislature.

3. WATERS AND WATERCOURSES — ENVIRONMENTAL LAW — GREAT LAKES VESSELS — SEWAGE TREATMENT — STATUTES.

> Federal standards for waste treatment aboard Great Lakes vessels place those vessels on a parity with municipalities with respect to waste treatment, thus accomplishing the objectives sought by the Michigan Legislature in the Watercraft Pollution Control Act of 1970 (33 USC 1322[c][1][B], 33 CFR § 159[1978], MCL 323.333, 323.334; MSA 3.533[203], 3.533[204]).

4. WATERS AND WATERCOURSES — ENVIRONMENTAL LAW — GREAT LAKES VESSELS — SEWAGE TREATMENT — STATUTES.

> The provisions of the Watercraft Pollution Control Act of 1970 dealing with sewage treatment and discharge by Great Lakes vessels do not absolutely prohibit all sewage discharge; only the discharge of sewage not treated according to Federal standards is prohibited by the act (MCL 323.333, 323.334; MSA 3.533[203], 3.533[204]).

*Brown & Brown,* and *Scott H. Elder,* General Counsel, Lake Carriers' Association, for the Lake Carriers' Association.

*Scholl, Theut, Robinson, Stieg & Schellig,* for the Dominion Marine Association.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski, Russell E. Prins* and *Thomas L. Casey,* Assistants Attorney General, for the Attorney General.

Before: M. J. KELLEY, P.J., and M. F. CAVANAGH and MacKENZIE, JJ.

PER CURIAM. This is an appeal, brought by defendant Attorney General, from a decision of the Circuit Court for the County of Mackinac construing certain sections of the Michigan Watercraft Pollution Control Act of 1970; MCL 323.331, *et seq.;* MSA 3.533(201), *et seq.,* (hereinafter referred to as WPCA), and granting plaintiffs injunctive relief against enforcement of a provision of the act which would prohibit the discharge of all sewage, whether treated or untreated, from cargo-carrying vessels engaged in commerce on Michigan waters.

In 1971, plaintiff Lake Carriers' Association[1] instituted an action against Michigan officials[2] in the United States District Court for the Eastern District of Michigan seeking declaratory and injunctive relief against enforcement of the WPCA, which was interpreted by the defendants as entirely prohibiting the discharge of sewage, whether treated or untreated, in state waters and as requiring vessels equipped with toilet facilities to carry sewage storage devices permitting subsequent on-shore disposal of sewage. Plaintiffs attacked the validity of the Michigan act on Federal constitutional grounds, including vagueness, interference with interstate and foreign commerce and with uniform maritime law, denial of due process and equal protection as well as violation of the supremacy clause by being in conflict with Federal water pollution control statutes, which allegedly contem-

---

[1] Plaintiffs are the Lake Carriers' Association and certain of its individual member companies who own and/or operate Federally enrolled and licensed Great Lakes bulk cargo vessels. Intervenor plaintiff, Dominion Marine Association, is an organization incorporated under the laws of the Dominion of Canada whose members own and/or operate Canadian registered commercial vessels in the Great Lakes.

[2] Defendants are the State Attorney General, The Department of Natural Resources and its Director, and the Water Resources Commission and its Executive Secretary.

plated pollution control through on-board treatment of sewage before discharge.

A three-judge panel of the district court dismissed the complaint for lack of a justiciable controversy and also found compelling reasons to abstain from consideration of the merits. *Lake Carriers' Ass'n v MacMullan,* 336 F Supp 248 (ED Mich, 1971). An appeal was taken to the United States Supreme Court and an amicus curiae brief was filed on behalf of Dominion Marine Association raising the additional arguments that the Michigan law conflicts with the United States-Canadian Boundary Waters Treaty of 1909, 36 Stat 2448; TS No. 548, and that the law enters the domain of foreign affairs, an area constitutionally reserved to the national government.

The United States Supreme Court held that the case did present an "actual controversy" within the meaning of the Declaratory Judgment Act, 28 USC 2201. However, the high Court went on to hold that abstention was appropriate because the WPCA had not been construed in any Michigan court and it appeared that the ambiguous language in the statute might be construed by the Michigan courts in such a way as to avoid or significantly modify the Federal questions raised. The Supreme Court, therefore, vacated the lower court judgment and remanded to the district court with direction to retain jurisdiction pending institution of appropriate proceedings in Michigan courts. *Lake Carriers' Ass'n v MacMullan,* 406 US 498; 92 S Ct 1749; 32 L Ed 2d 257 (1972). An order to that effect was entered in the district court, *Lake Carriers' Ass'n v MacMullan,* Civil Action No. 36194 (June 20, 1972).

State court proceedings were initiated when a complaint was filed in the Circuit Court for the

County of Mackinac seeking declaratory relief, pursuant to GCR 1963, 521, definitively determining the allegedly ambiguous portions of the WPCA. In reviewing the WPCA, the circuit court first considered the relation of the Michigan statute to the Federal Water Pollution Control Act, 33 USC 1251 *et seq.,* the Boundary Waters Treaty and the United States-Canadian Great Lakes Water Quality Agreement of April 15, 1972, 23 UST 301; TIAS No. 7312. Reconciling the statute to the other provisions, the court found that the Michigan act is neither clear nor unambiguous and decided, therefore, that it was necessary to construe the statute in order to ascertain if it did proscribe the discharge of all sewage. As an aid in determining the intent of the Legislature and the meaning of the statute, the court also looked to the entire water resources commission act, MCL 323.1 *et seq.;* MSA 3.521 *et seq.* (hereinafter referred to as WRCA). It found that the overall objective of the WRCA was to prohibit the pollution of Michigan waters. It further found that the watercraft pollution section of the WRCA does not ban the discharge of all sewage, but seeks only to prohibit the deposit in Michigan waters of any sewage or liquid or solid materials which "render the water unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes". MCL 323.333(1); MSA 3.533(203)(1). The circuit court then held that the WPCA did not bar the discharge of all sewage, but that the discharge of sewage treated to an adequate degree by a United States or Canadian Federally certified marine sanitation device was permissible.

In this appeal, the defendant Attorney General

challenges only the trial court's construction of the statute vis-à-vis the various rules of statutory interpretation. Because the lower court did not reach the constitutional issues involved in light of its finding that the statute did allow the discharge of adequately treated sewage, those issues will be reached only if this Court takes a view contrary to that of the circuit court as to the statute's construction. Thus, at the outset, we are presented with a single and controlling question of law.

*Does the Watercraft Pollution Control Act prohibit the discharge of sewage, whether treated or untreated, from cargo-carrying vessels engaged in commerce on the waters of the State of Michigan?*

The defendant-appellants contend that the circuit court erred in finding the WPCA ambiguous and therefore susceptible to judicial interpretation. Alternatively, if the act is deemed to be ambiguous, it is argued that the circuit court improperly relied on the permit system established by the Water Resources Commission Act, which allows the discharge of treated sewage by municipalities and shore-based facilities, as indicating a legislative tolerance of the discharge of treated sewage because the latter act did not require such permits at the time the WPCA was enacted.

Plaintiffs-appellees answer that the United States Supreme Court has found the language of the WPCA to be ambiguous, and abstained from addressing the merits of this dispute in order to permit Michigan courts the opportunity to render a clarifying interpretation. Furthermore, it is argued that the circuit court's construction of the WPCA, which reconciled state and Federal statutes, as well as treaties, is merely an application of § 11 of the act which provides that "the provision or the rule [presumably promulgated thereun-

der] shall be of such flexibility that a watercraft owner, in carrying out the provision or rule, is able to maintain maritime safety requirements and comply with the federal marine and navigation laws and regulations". MCL 323.341; MSA 3.533(211). In any event, plaintiff contends the WPCA is only concerned with "detrimental" sewage rather than "benign" sewage (sewage treated in accordance with Federal standards by Federally approved and certified treatment devices); as the discharge of treated sewage meeting Federal standards is permitted by municipalities and shore-based industries, to read the WPCA so as to proscribe such discharge from vessels raises serious constitutional questions.

In resolving these opposing contentions and reviewing the construction of the circuit court, our attention is directed to the question of whether or not the language of the WPCA is unclear and ambiguous for, if a statute is unambiguous on its face, there is no room for statutory construction or interpretation. *Detroit v Redford Twp,* 253 Mich 453, 455; 235 NW 217 (1931), *Luyk v Hertel,* 242 Mich 445, 448; 219 NW 721 (1928). On the other hand, if ambiguity is found, then it is the duty of the court to consider the intent of the Legislature. As stated in *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956):

"The cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature. If the language of a statutory provision is unambiguous, the intent must be determined accordingly. It is requisite that pertinent provisions of the act be considered together, to the end that the general plan and purpose of the law-making body may be ascertained. All parts of the specific provision to be construed must be given force and effect. This means that no phrase, or

clause, or word, may be ignored in determining the construction of such provision."

Turning to the statute in question, § 4 of the WPCA, MCL 323.334; MSA 3.533(204), prescribes the conditions under which a marine toilet may be used on state waters, that is, requiring the use of sewage storage containers. The provision states in relevant part:

"(2) A person [defined in § 2(i) to include an individual, or corporation, association or other entity] owning, operating or otherwise concerned in the operation, navigation or management of a watercraft [defined in § 2(g) to include foreign and domestic vessels engaged in commerce] having a marine toilet shall not own, use or permit the use of such toilet on the waters of this state unless the toilet is equipped with 1 of the following pollution control devices:

"(a) A holding tank or self-contained marine toilet which will retain all sewage [defined in § 2(d) as meaning 'all human body wastes, treated or untreated'] produced on the watercraft for subsequent disposal at the approved dockside or onshore collection and treatment facilities.

"(b) An incinerating device which will reduce to ash all sewage produced on the watercraft. The ash shall be disposed of onshore in a manner which will preclude pollution."

If the foregoing language were considered in isolation, then defendant's contention, that the act absolutely prohibits the discharge of any sewage into Michigan waters, would be unassailable. When § 3 of the act is considered, however, conflict and resulting ambiguity emerge. Section 3 of the act states:

"Sec. 3. (1) A person shall not place, throw, deposit, discharge or cause to be discharged into or onto the

waters of this state, any * * * sewage * * * or other liquid or solid materials which render the water unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes.

"(2) It is unlawful to discharge, dump, throw or deposit * * * sewage * * * from a recreational, domestic or foreign watercraft used for pleasure or for the purpose of carrying passengers, cargo or otherwise engaged in commerce on the waters of this state." MCL 323.333; MSA 3.533(203).

In reaching the conclusion that the act was unclear and ambiguous, the circuit court viewed the language of the United States Supreme Court opinion as a directive on the subject. The high Court's opinion states in pertinent part:

"The Michigan Watercraft Pollution Control Act of 1970 has not been construed in any Michigan court, and, as appellants themselves suggest in attacking it for vagueness, its terms are far from clear in particulars that go to the foundation of their grievance. It is indeed only an assertion by appellees that the Michigan law proscribes the discharge of even treated sewage in state waters. Section 3(2) of the Act does state that '[i]t is unlawful to discharge * * * sewage * * * from a recreational, domestic or foreign watercraft used for pleasure or for [commerce] * * *,' and § 4(2) does require vessels equipped with toilet facilities to have sewage storage devices. Yet § 3(1) seemingly contemplates the discharge of treated sewage by merely prohibiting any person from emitting sewage 'which [renders] the water unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes.' Moreover, § 11 provides that '[t]o be enforceable, the provision [of the Act] or the rule [presumably promulgated thereunder] shall be of such flexibility that a watercraft owner, in carrying out the provision or rule, is able to maintain maritime safety requirements and comply with the federal marine and navigation laws

and regulations.' Michigan has thus demonstrated concern that its pollution control requirements be sufficiently flexible to accord with federal law. We do not know, of course, how far Michigan courts will go in interpreting the requirements of the state Watercraft Pollution Control Act in light of the federal Water Quality Improvement Act and the constraints of the United States Constitution." (Footnotes omitted). *Lake Carriers' Ass'n v MacMullan,* 406 US 498, 511-512; 92 S Ct 1749; 32 L Ed 2d 257 (1972).

We, like the circuit court, think that the Supreme Court has identified the central inconsistency of the act. Furthermore, we agree with the high Court's conclusion that the language of § 3(1), which merely prohibits the discharge of sewage "which render[s] the water unsightly, noxious", etc., is in direct conflict with the absolute prohibitions embodied in § 3(2) and § 4(2) barring the discharge of all sewage. As to the question before us, *i.e.,* whether or not the statute bars the discharge of all or merely inadequately treated sewage, it is apparent that the WPCA provides no clear answer. As the vagueness of the act's language presents a classic instance warranting judicial construction and interpretation, we hold that the circuit court was correct in finding the act neither clear nor unambiguous.

In construing and interpreting the language of the WPCA, we are guided by familiar principles of statutory construction. First, the court must look to the object to be accomplished, the evils and mischief sought to be remedied and place on the statute a reasonable construction which will best effect its purpose rather than defeat it. *Stover v Retirement Board of St. Clair Shores,* 78 Mich App 409, 412; 260 NW2d 112 (1977), *Municipal Investors Ass'n v Birmingham,* 298 Mich 314, 322; 299 NW 90 (1941), *aff'd,* 316 US 153; 62 S Ct

975; 86 L Ed 1341 (1942), 82 CJS, Statutes, § 323, pp 593-613. In addition, vague and ambiguous statutes must be interpreted as a whole and constructed so that all of their provisions have some meaning, the entire statute given effect, and a harmonious and consistent result produced. *In re Petition of State Highway Comm,* 383 Mich 709, 714; 178 NW2d 923 (1970), *People v Miller,* 78 Mich App 336, 343; 259 NW2d 877 (1977), 21 MLP, Statutes, § 95, pp 99-104. Finally, in construing this particular statute, *i.e.,* one capable of more than one meaning, we believe that we must look to other statutes *in pari materia* in order to determine the evil sought to be remedied by the Legislature. *Borden, Inc v Dep't of Treasury,* 391 Mich 495, 523; 218 NW2d 667 (1974), *People v Martin,* 59 Mich App 471, 481; 229 NW2d 809 (1975). 82 CJS, Statutes, § 365, pp 799-801.

In obtaining a harmonious and consistent result in our construction of the WPCA, we are mindful that our interpretation must take into account the fact that Federal statutes and national treaties stand *in pari materia* to the act at issue. Indeed, we think plaintiffs are correct when they argue that § 11 of the act, cited above, indicates a legislative recognition of the interplay of state and Federal pollution control in international waters. Consequently, we briefly summarize the most salient points of Federal statute and treaty law touching this question.

The Federal Water Pollution Control Act, 33 USC 1251 *et seq.,* as amended by the Clean Water Act of 1977, Pub. L. No. 95-217, 91 Stat 1566, updates Federal pollution standards for Great Lakes vessels. Specifically, the amendment requires the administrator of the Environmental Protection Agency to establish waste treatment

standards for Great Lakes vessels which are, at a minimum, the equivalent of secondary treatment standards for municipalities. 33 USC 1322(c)(1)(B). Furthermore, the rules promulgated pursuant to that statute establish an outside time limit of January 30, 1980, for the installation of marine sanitation devices for treating sewage prior to discharge. 33 CFR § 159 (1978). Thus, we are inclined to agree with the circuit court that the Federal law now places vessels and municipalities on a parity with respect to waste treatment, and thus accomplishes the objectives which the Michigan Legislature sought to achieve through the use of sewage holding tanks and subsequent on-shore treatment. Further, the Boundary Waters Treaty of 1909, as implemented by the Great Lakes Water Quality Agreement of 1972, constitutes additional legal authority indicating a Federal commitment to on-board sewage treatment. Annex 4 of the Agreement states in relevant part:

"Every vessel operating in these waters with an installed toilet facility shall be equipped with a device or devices to contain the vessel's sewage, or to incinerate it, *or to treat it to an adequate degree.*" (Emphasis supplied).

In addition to Federal statute and treaty, our review of related enactments also requires that we, like the circuit court, view the WPCA in the context of the entire Water Resources Commission Act. The circuit court based its conclusion, in part, on the fact that municipalities and shore-based industries are allowed to discharge waste into the Great Lakes pursuant to permits requiring such waste to receive secondary treatment in accordance with Federal standards. We endorse this

conclusion and the language of the circuit court opinion which states:

"This Court concludes that the Michigan legislature considers secondary treatment, in accordance with federal standards, as adequate sewage disposal and that such discharges do not render the waters unsightly, noxious or unwholesome. * * * While § 2(d) of the Act defines 'sewage' as 'all human body wastes, treated or untreated', in order to reconcile this section with § 3(1), which only prohibits emission of sewage which renders the water 'unsightly, noxious or otherwise unwholesome so as to be detrimental (etc)', the term 'treated' in § 2(d) cannot be deemed to include wastes receiving treatment to a degree whereby the waters of the state are not so impaired. * * *

"The Act should not be read to proscribe the discharge of adequately treated sewage into Michigan waters. The discharge of treated sewage meeting federal standards is permitted by municipalities and industries, and to read the Act to proscribe such discharge from vessels raises serious constitutional questions avoided by an interpretation of the Act permitting the discharge of treated sewage from vessels which conforms to federal standards and which, therefore, does not render the state's waters unsightly, noxious or otherwise unwholesome * * * ' [sic] The objective of the Act is thus achieved and constitutional questions avoided, which could render the Act unenforceable, 82 C.J.S., Statutes, Sec. 316 (p. 545); *Insurance Commissioner v American Life Insurance Company,* 290 Mich 39, 44-45; 287 NW 368 (1939)."

We think it apparent that the Federal statute and the Michigan act have a common objective, that is, the prevention and control of water pollution. It is equally apparent from a review of the statutes that Federal law envisions pollution control through on-board sewage treatment before disposal in navigable waters. The WPCA, as presently stated, embodies an ambiguous and inconsist-

ent approach to the problem of pollution control: first, proscribing all discharge in § 3(2) and § 4(2); and second, qualifying this general proscription in § 3(1) to only that sewage which "render[s] the water unsightly, noxious or otherwise unwholesome so as to be detrimental to the public health or welfare or to the enjoyment of the water for recreational purposes". In order to achieve a harmonious and consistent result with statutes and treaty law *in pari materia,* we are compelled to reject that interpretation of the WPCA which would absolutely prohibit all sewage discharge and conclude that the correct construction to be placed upon the act is one which bans only the discharge of inadequately treated sewage, *i.e.,* that not treated in accordance with Federal standards.

We therefore affirm the holding of the trial court finding the WPCA to be ambiguous and construing it to bar only the discharge of treated sewage not meeting Federal standards.

Affirmed.