PEOPLE v FOUNTAIN
PEOPLE v RONALD CARTER
PEOPLE v ANDERSON

1. CRIMINAL   LAW—JURY   TAMPERING—INVESTIGATION—RIGHT   TO
   COUNSEL.

   A jury tampering investigation by the trial judge during a
   criminal trial is a critical stage of the proceedings at which
   defendants and their attorneys have a constitutional right to be
   present.

2. CRIMINAL   LAW—JURY   TAMPERING—INVESTIGATION—RIGHT   TO
   COUNSEL.

   A defendant in a second-degree murder trial was entitled to a
   new trial where he and his attorney were excluded from the
   court's investigation of a report by a juror of tampering.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESUMPTIONS.

   Instructing the jury in a criminal case that every witness is
   presumed to speak the truth should be avoided because it tends
   to shift the burden of proof and to derogate from the jury's
   right to determine the credibility of witnesses.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 June 7, 1972, at Detroit. (Docket Nos. 12842, 12843, 12844.) Decided October 26, 1972. Leave to appeal granted, 389 Mich 762.

Joe Fountain, Ronald Carter, and Melvin Anderson were convicted of second-degree murder. Defendants appeal. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial § 993.
[2] 53 Am Jur, Trial § 480.
   58 Am Jur 2d, New Trial § 113.
[3] 58 Am Jur, Witnesses § 861.

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendants on appeal.

Before: J. H. GILLIS, P. J., and McGREGOR and BORRADAILE,* JJ.

BORRADAILE, J. A jury found the defendants guilty of murder in the second degree. MCLA 750.317; MSA 28.549. Ronald Carter was sentenced to life imprisonment, Joe Fountain was sentenced to a term of 7-1/2 to 15 years in prison, and Melvin Anderson was sentenced to a term of 5 to 10 years in prison. Two codefendants, Bruce Hunter and Rodney Braxton, were found not guilty. All five defendants were represented by separate counsel at the trial.

The deceased, Charles Flagg, was shot and stabbed repeatedly, and could have died from either the gunshot or stab wounds. Carter admitted firing the shots, but claimed they were in self-defense. No one admitted inflicting the stab wounds.

It was the theory of the people that there had been an altercation between the defendants and another group of young men at a Shrimp Hut in Detroit. A short while later the two groups met in front of a house on McClellan Street. When Charles Flagg attempted to act as a peacemaker, he was shot by Carter and stabbed and kicked by the other defendants.

It was Carter's testimony that two cars pulled up on McClellan and five or six men got out and

---

* Probate judge, sitting on the Court of Appeals by assignment.

jumped on Anderson. When he went to Anderson's aid, Carter was hit from behind and knocked to the ground. He then grabbed a gun and fired into the air telling the group of people fighting him and his group to stop and go back. He said that when they kept coming he fired into the group in self-defense without intending to kill anyone.

Anderson testified that he was attacked and hit with a bicycle rim and a brick. He said Carter came to his aid.

Fountain testified that he was in the house watching television and was not involved in the incident until after Carter and Anderson came into the house following the shooting of Flagg.

Appellate counsel argues that the trial judge committed reversible error when she spoke to a juror in chambers in the absence of defendants and their counsel, refused to reveal the substance of her conversation to counsel, and subsequently *sua sponte* excused the juror. The people claim that such action was authorized by MCLA 768.18; MSA 28.1041, which provides where a jury of 14 has been impaneled that should any condition arise during the trial which in the opinion of the court justifies the excusal of any of the jurors, the court may do so and the trial shall proceed unless the number of jurors be reduced to less than 12.

In the present case the jury of 14 was seated and the trial commenced on June 19, 1969. Midway in the trial a juror apparently asked to speak with the judge privately. On Monday morning, June 30, 1969, there was an in-chambers colloquy between the court and the juror, Mrs. Buckner.[1]

---

1

*Detroit, Michigan*
*Monday, June 30, 1969*
*Morning Session*
*In Chambers*
"*The Court:* I want you to be perfectly frank in what you are saying

The juror reported a telephone call and fears that she had therefrom if there were guilty verdicts in the case. Mrs. Buckner continued to sit with the jury through June 30, July 1 and July 2.

to me. I don't know what it is. The only reason I am having a record made is in the event it is necessary. But I can assure you if you have any fear or anything like that, I will not make it public.

"I am sorry. I don't recall your name.

"*Mrs. Buckner:* Phyllis Buckner.

"My husband's aunt called me Friday and said a friend of hers seen me here in court. And she called and asked if I was on the jury that five fellows were involved. I asked her why. She said, 'This friend saw you'. It is her sister-in-law's son is one of the defendants. She said she wished she could have seen me first. She would have offered me some kind of money to try to help them out. I said, 'It is nothing I can do about it. It is not left up to me'. She said, 'She knew it was you. She seen you at Sears before'. I told her, 'Don't approach me'. I don't know who it is, who the son is or the mother.

"*The Court:* Now, let me ask you this, Mrs. Buckner: You don't know any of the people involved?

"*Mrs. Buckner:* No.

"*The Court:* Would it bother you in any way in making a determination in this case?

"*Mrs. Buckner:* Well, since she knows where I am working at, I am afraid in the case it might be a guilty verdict that she might want to do something to me.

"*The Court:* That is essentially what I wanted to ask you.

"Will it interfere with your honest judgment in the matter?

"*Mrs. Buckner:* No, it wouldn't.

"*The Court:* I think what you suggest is highly unlikely. It seems to me that an ordinary person might say, 'Well, if I could influence somebody, I would try to do it'. But it doesn't sound likely more than that to me.

"As I say, you have to arrive at an opinion on your own in connection with other people. And, so, you know, you are not by any means a determining factor. You are one of 12 people who have to make a decision.

"I really want to know—I want you to tell me very carefully if that incident would keep you from arriving at the decision you thought was correct?

"*Mrs. Buckner:* No. Because I don't know who her son is anyway. I was just wondering, since she knows where I work at, maybe she might try to give me a hard time in case the verdict wasn't the way she wanted it.

"*The Court:* Well, as I say, I would doubt that. But if anything did come up, I would expect you to report it here to us if anything comes up. Because that would be absolutely intolerable. As I say, I think people—and many times, I think people feel that way without having any feeling of revenge. It is simply because they are concerned. And they want to do what they think they might be able to do to help

On Tuesday afternoon, July 1, 1969, the five defense counsel inquired of the court as to the meetings between the court and two of the jurors.[2]

someone that they are concerned about. But as I say, the essential thing I wanted to know from you is if you can continue as a juror and be impartial as you have to be, and consider all of the evidence in the case.

"*Mrs. Buckner:* Yes.

"*The Court:* Have you discussed the conversation with any of the jurors?

"*Mrs. Buckner:* No. No, I have not.

"*The Court:* May I say that the matter is not to be discussed at any time or in any way with the jurors.

"*Mrs. Buckner:* I wouldn't.

"*The Court:* I am sure of that.

"It was very nice of you to tell me. I appreciate it.

"*Mrs. Buckner:* It was worrying me all week-end."

*(Whereupon the in-chambers conference was concluded.)*

2

*(Jury leaves courtroom.)*

"*The Court:* Mr. Zisman, do you want to make your statement again?

"*Mr. Zisman:* For the purpose of the record, yes.

"We are standing in the court. And we saw a couple of jurors going into the judge's chamber. That light coming through the window is kind of blinding me, your Honor.

"Defense counsel has discussed it. And we were wondering if it had anything to do with the conduct of the trial. I mentioned it to the prosecutor. And the prosecutor said he heard nothing about it. I thought it would be best that all five attorneys, together with the prosecutor, come and ask you. Because we didn't want to have anything in open court. We didn't think it was fair to the court or prosecutor or anyone.

"*The Court:* I don't think it has any reflection on the court. There were just two matters brought to my attention by the jurors. One is a matter of absolutely no consequence. It was just a personal matter with one of the jurors.

"The other juror, however, did bring a problem to my attention. I discussed it with her first, because I consider the jury to be a part of the court. And I didn't have any disposition, I don't at this time, to share with you, as either the people's attorney or the defense attorneys the nature of the problem she brought to me.

"But I would say to you my inclination is to let her go. And it may be that you may have a disposition to challenge my decision. As I said, I have thought about it very carefully. And I don't feel it is proper for me to divulge to you the nature of the problem. I don't know whether it would weigh against the people or against the defense. I want to assure you I have considered it very carefully.

"I would be pleased if you would stipulate to her release from the

The court advised counsel that one juror's matter was of no consequence, but that the other juror had a problem that was "critical". All defense counsel stipulated to the release of the second juror except Carter's counsel, Mrs. Ritter. She maintained that her client was entitled to disclosure of the reason.

---

jury. If you do not, my inclination is to dismiss her on my own. I suppose there may be some area in which you could make an appeal. But I am going to do it because I think it is that critical.

"The other person that brought a problem to my attention, it was a superficial kind of problem she could take care of herself. A superficial kind of thing that certainly didn't need the exercise of any authority on my part.

"The other woman brought a very grievous matter to my attention. And my own judgment is—and as I say, I have very serious reasons for not sharing it with any of you.

"*Mr. Shreve:* I will stipulate, your Honor.

"*Mr. Zisman:* Is that juror number two, your Honor?

"*The Court:* No.

"I am not going to tell you which one it is, either.

"*Mrs. Ritter:* On the record, your Honor—

"*Mr. Chomski (interposing):* I have implicit judgment in what you think.

"I will stipulate.

"*The Court:* I appreciate it, Mr. Chomski, very much.

"If it were something that I thought was appropriate to say, I would have said it yesterday. And, really, I would never ask you unless I thought it was a matter of serious concern.

"*Mr. Zisman:* I have all the faith and confidence in this court.

"*The Court:* I understand you have a problem as far as your client is concerned. And you take—

"*Mr. Zisman (interposing):* I hesitated very much. I gave it considerable thought before I mentioned it to any of my colleagues. And, then, I reluctantly said we ought to take it up with the court. Because if it has anything to do with the conduct of the trial, I think we ought to be apprised of it. I even asked the prosecutor. I didn't want to come in here.

"*The Court:* Mr. Zisman, you can ask me anything. I may not tell you. But you can ask me.

"*Mr. Chomski:* We will not have too much of a problem. There are 14 jurors.

"*The Court:* Uh-huh.

"*Mr. Chomski:* And I think most of the boys have gone to high school. And they know there is a jury of twelve. We don't have to tell them how two of the jurors are taken off.

"*The Court:* Uh-huh.

"*Mr. Shreve:* I don't see any point to that. I think they are more

On Wednesday morning, July 2, 1969, Mrs. Ritter moved for dismissal of the case against Carter on the basis that the judge had denied her request for disclosure.[3] She specifically argued that there

than an unusually good jury. I think if we are licked, I will take it with a smile. I think they have been more attentive than most jurors I have seen.

*"The Court:* I think it is a quality jury. But that is only intuitive.

*"Mr. Shreve:* I have a little intuition some time.

*"Mr. Chomski:* That comes from his mother's side.

*"The Court:* Why don't you think of it and tell me what your disposition is.

*"Mr. Shreve:* I am already on record, your Honor.

*"Mrs. Ritter:* I might as well make my statement for the record now, if I may.

"I also have implicit faith in the judgment of the court. But I think on behalf of defendant, Ronald Carter, that I would ask for disclosure of the reason.

*"The Court:* Very well.

"And that is substantially your statement, Mr. Zisman?

*"Mr. Zisman:* No.

"I go along with the stipulation. I have no objection to it. The only thing I wanted to find out, I am nosy, you know. As I said, I had just said to myself—I hadn't said it to anyone else. I just said to myself, 'Well, we are starting at ten o'clock tomorrow. Maybe I can get them all in here about a quarter to nine and see what they say.'

*"The Court:* Mr. Summer.

*"Mr. Summer:* Whatever the Court wants to do is okay with me.

*"The Court:* Okay.

*"Mrs. Ritter:* To complete the record on that, that means you will not make a disclosure, is that right?

*"The Court:* That's right."

*(Whereupon the foregoing-entitled cause was adjourned to Wednesday, the 2nd day of July, 1969, at ten o'clock a.m.)*
3

*Detroit, Michigan*
*Wednesday, July 2, 1969*
*Morning Session*

*(Whereupon the foregoing-entitled cause was resumed pursuant to adjournment; parties present same as before.)*

*"Court Clerk:* File A-146825, Ronald Carter, Melvin Anderson, Joe Fountain, Bruce Hunter and Rodney Braxton.

*"Mrs. Ritter:* I would like to make a motion. I don't know whether the court would like to hear it in chambers or open court.

*"The Court:* Are you referring to the matter we discussed yesterday for the reasons you sat out on the record yesterday? And are you making a motion for dismissal?

*"Mrs. Ritter:* Yes.

might be possible contamination of other jurors, but that without disclosure she could not evaluate that possibility. The motion was denied.

*"The Court:* I deny your motion. I think the record would substantiate any argument you have in that regard.

*"Mrs. Ritter:* May I set it down before trial?

*"The Court:* I would just as soon retire to chambers.

*In Chambers*

*"The Court:* Mrs. Ritter.

*"Mrs. Ritter:* Your Honor, the court informed the defense attorneys and the prosecutor that two jurors had come to talk with your Honor; and that one matter was personal. And I believe all the defense attorneys stipulated that we would accept the court's information that it was a personal matter and allow that matter to go unchallenged.

"The second juror, the court informed us, had informed the court of something that was serious enough that the court felt it ought to discharge that juror. But the court stated that in its judgment, it would not disclose to the defense what it was that the juror had informed the court of.

"On behalf of defendant Carter, I did not stipulate to that discharge of that one juror, and asked for disclosure of what it was that the juror had told the court. And the court denied me the request for disclosure.

"I am making a motion for dismissal on the basis that the defendant has the right to the jury. Not the prosecutor and not the court. And that the defendant, in a sense, has a vested interest—has an interest in the jury. And it is the jury that the defendant has selected. So that when any juror is discharged, the defendant has a right to know for what reason.

"Now, there may be possible contamination of other jurors. But without that disclosure, the defendant, and defendant Carter in particular, cannot know what the basis for the discharge of that juror is, and cannot know whether or not the rest of the jury has been contaminated in any way.

"That is the ground.

*"The Court:* Very well.

"I made a separate record regarding the juror who had the substantial problem.

"I don't mind telling you the other lady wanted to know whether or not she should advise a sewing school whether she would be available on Monday or not. That is what I considered a non-compelling consideration. She just wanted my judgment about whether or not she should write to the school and advise them she would not be there this month for her sewing class. I told her I thought it might be a good idea for her to do so.

"As I said, I made a separate record about the difficulty of the other woman. I do not intend to disclose it. But if it became a matter for appeal, there is a record of her discussion. A record of her entire discussion with me.

Mrs. Buckner did not sit on the jury on Thursday, July 3, 1969, or thereafter. However, she had already sat on the jury for three full days of testimony following her disclosure to the court, and counsel for the defendants were not told the substance of the disclosure.

In *People v Nickopoulos,* 40 Mich App 146, 151 (1972), by Judge HOLBROOK, this Court said:

"The defendants and their attorneys had a constitutional right to be present at the inquiry concerning jury tampering conducted by the trial judge in this case. We rule that such an inquiry constitutes a critical stage in the proceedings.

"The failure of the court to afford defendants in the instant case the right to be present at the inquiry, absent a waiver of this constitutional privilege, entitles defendants to a new trial without proof of actual injury or prejudice. *People v Medcoff, supra* [344 Mich 108 (1955)].

"This ruling is in no sense to be construed as a

---

"And at this time, I deny disclosure to the defense.

"*Mrs. Ritter:* Thank you.

"*Mr. Zisman:* There is another thing.

"My client informed me today that one of your officers, I didn't ask him which one—I think this officer here (indicating) talked to one of the jurors about 20 or 25 minutes yesterday. And they want to know why. I said, 'If it is a court officer, I will ask the judge.

"*Officer Chemotti:* It was John. It was John Koss from downstairs, presiding. It had nothing to do with it.

"*The Court:* It had nothing to do with the case whatsoever. It was a personal matter.

"*Mr. Zisman:* That is all. I thought if my client asked me, I would inquire.

"*The Court:* I was going to say I bet it wouldn't have been one of my police officers.

"*Mr. Zisman:* That is good enough.

*In Open Court*

"*Mr. Roberson:* The people are ready to proceed.

"*The Court:* That juror is going to be excused.

"The matter to which we have all referred, is going to be disposed of at the close of the day.

"*Mr. Roberson:* Thank you, your Honor."

*(Jury in courtroom.)*

disapproval or censure of the trial court's action in questioning the jurors concerning the phone calls. This was both necessary and commendable. Judicial objection is based upon the defendants' right to be present at every stage of their trial where their substantial rights might be affected. MCLA 768.3; MSA 28.1026; Const 1963, art I, § 20."

Similarly, in the present case the defendants and their attorneys had a constitutional right to be present at the inquiry concerning jury tampering conducted by the trial judge on June 30, 1969. At the conclusion of such inquiry, the trial judge had the authority pursuant to MCLA 768.18, *supra,* to excuse the juror if in her opinion such action was justified. Since the court failed to afford the defendants the right to be present at the inquiry, Ronald Carter is entitled to a new trial without proof of actual injury or prejudice, his attorney having clearly preserved the issue on the record. Although counsel for Joe Fountain and Melvin Anderson stipulated to the release of the juror, we hold that Fountain and Anderson also are entitled to a new trial because to hold otherwise on the facts of this case might result in a miscarriage of justice.

Two other issues raised on appeal will be discussed in order to decrease the likelihood of error during retrial. The defendants claim that the court should have instructed the jury on manslaughter and assault with intent to do great bodily harm less than murder. The trial court limited the possible verdicts to murder in the second degree and not guilty. The record does not contain defense counsel's written requests for instructions. See *People v Wynn,* 386 Mich 627 (1972). We do find, however, that the testimony presented at the trial would have supported instructions on lesser included offenses if requested.

For example, any person who wounds any other

person by the discharge of any firearm pointed intentionally but without malice at such person is guilty of manslaughter if death ensues from the wound. MCLA 750.329; MSA 28.561. If the jury had been instructed on manslaughter, it could have found that the evidence did not prove self-defense but that it did prove the wounding of Charles Flagg from the discharge of a firearm pointed intentionally at him but without malice and that he died from the wounds. Similarly, the jury might have found common-law manslaughter which has been defined as the unlawful killing of another without malice, express or implied. *People v Myers,* 30 Mich App 409 (1971). Compare *People v Morrin,* 31 Mich App 301 (1971). The testimony would also support an instruction on assault with intent to do great bodily harm less than murder. MCLA 750.84; MSA 28.279.

The other issue raised meriting discussion is the contention that the trial court erred in instructing the jury that every witness was presumed to speak the truth. While no objection was made to the instruction and this Court found no error in a similar instruction in *People v Poe,* 27 Mich App 422 (1970), *leave granted* 384 Mich 799, we think the trial court should not give the instruction upon retrial. Such an instruction has been held to derogate from the jury's sole right to determine the credibility of witnesses, and to conflict with the presumption of innocence of a defendant. *United States v Meisch,* 370 F2d 768 (CA 3, 1966). Additionally, it has been said that it shifts the prosecution's burden of proving guilt beyond a reasonable doubt upon the presentation of even the slightest incriminating testimony. *United States v Birmingham,* 447 F2d 1313 (CA 10, 1971). See also *United States v Griffin,* 382 F2d 823 (CA 6, 1967).

Reversed and remanded for a new trial.

All concurred.