PEOPLE v DOSS

OPINION OF THE COURT

1. APPEAL AND ERROR—PRELIMINARY EXAMINATION—PROBABLE
   CAUSE—EVIDENCE—LAWFUL JUSTIFICATION.

   A court reviewing a magistrate's determination that a defendant
   should be bound over for trial on a charge of manslaughter
   erred in determining that the magistrate had not abused his
   discretion in binding the defendant over for trial where the
   evidence presented at the preliminary examination both nega-
   tived application of the statute under which the defendant was
   charged, and did not show that the defendant caused the death
   without lawful justification or excuse.

2. HOMICIDE—FIREARMS—MALICE—CARELESS DISCHARGE—DELIBER-
   ATE FIRING—STATUTES.

   The statute which makes it unlawful to kill another person by
   the discharge of a firearm aimed intentionally but without
   malice was intended to be applied in cases involving the care-
   less use of firearms where the accused intended to aim at the
   victim but did not intend to fire the weapon; the statute does
   not apply where a weapon is deliberately aimed and deliber-
   ately fired at the person wounded (MCLA 750.329; MSA
   28.561).

3. CRIMINAL LAW—MALICE—EVIL INTENT—INTENT TO CAUSE HARM—
   ABSENCE OF JUSTIFICATION.

   The phrase "without malice" has been given a much broader
   meaning in the law than "without evil intent"; malice requires

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 78 et seq.
[2–5] 40 Am Jur 2d, Homicide §§ 87, 95.
[3] 21 Am Jur 2d, Criminal Law § 86.
[6] 21 Am Jur 2d, Criminal Law § 440 et seq.
   54 Am Jur 2d, Homicide § 54 et seq.
[7] 5 Am Jur 2d, Arrest §§ 16, 22–33.
[8] 40 Am Jur 2d, Homicide § 137.
[9–12] 21 Am Jur 2d, Criminal Law § 440 et seq.
[13] 40 Am Jur 2d, Homicide § 134 et seq.

an intent to cause the very harm which results or some harm of the same general nature, or an act done in wanton or willful disregard of the plain and strong likelihood that some such harm will result; it requires on the negative side the absence of any circumstance of justification, excuse, or recognized mitigation.

4. CRIMINAL LAW—CARELESS USE OF FIREARMS—POLICE—INTENT TO CAUSE HARM—STATUTES.

A police officer who wounds another either justifiably, as in self-defense or in apprehending a fleeing felon, or maliciously, with a criminal intent, intends to cause the harm which results and should therefore not be charged under a statute proscribing the careless use of firearms (MCLA 750.329; MSA 28.561).

5. HOMICIDE—STATUTES—FIREARMS—MALICE—POLICE—RIGHTS AND DUTIES.

The statute which proscribes the killing of another by the discharge of a firearm aimed intentionally but without malice should not be applied to policemen acting properly within the scope of their duties; the special rights and duties of policemen must be kept in mind when related criminal prosecutions are instituted against them.

6. HOMICIDE—TRIAL—PRELIMINARY EXAMINATION—ELEMENTS OF CRIME—MANSLAUGHTER—JUSTIFICATION.

A magistrate conducting a preliminary examination on a charge of manslaughter must require proof that the crime itself has been committed; an element of the crime of manslaughter is that the defendant caused the death without lawful justification or excuse.

7. ARREST—PROBABLE CAUSE—POLICE—PRESENCE AT SCENE—ARREST WITHOUT WARRANT—TEST.

The presence of an individual at the scene of a crime is enough to establish probable cause to justify a police officer in making an arrest of that person without a warrant; the test of the officer's actions in such a situation is whether under the circumstances confronting the officer there was probable cause to believe the suspect had aided in the commission of the known felony.

8. ARREST—POLICE OFFICERS—RETREAT—REASONABLE FORCE—SELF-DEFENSE.

A police officer making an arrest is not required or expected to retreat; he has a duty to use reasonable force, including the obligation to counter major force with major force, even at the risk of his life, in order to carry out the responsibilities of his

job; the law of self-defense involves different considerations for a police officer in the course of his duty than for a private citizen.

DISSENT BY N. J. KAUFMAN, J.

9. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE—CONNECTION TO OFFENSE—CORPUS DELICTI—POSITIVE PROOF—EVIDENCE—ELEMENTS.

*A magistrate's determination at a preliminary examination that there is "probable cause" to believe a defendant guilty has reference to the connection of the defendant with the alleged offense rather than to the* corpus delicti; *positive proof of guilt by the prosecution is not required to bind the defendant over, but there must be evidence on each element of the crime charged or evidence from which those elements may be inferred.*

10. APPEAL AND ERROR—PRELIMINARY EXAMINATIONS—SUBSTITUTING JUDGMENT—EVIDENCE—ABUSE OF DISCRETION.

*A court reviewing a magistrate's determination of probable cause to bind a defendant over on a charge of manslaughter may not substitute its judgment for that of the magistrate; neither the reviewing court nor the Court of Appeals may weigh the evidence to determine the facts in reviewing such a determination, and each may overturn the ruling of the court below only where an abuse of discretion is found.*

11. APPEAL AND ERROR—EXAMINING MAGISTRATES—SUBSTITUTING JUDGMENT—PROBABLE CAUSE—ABUSE OF DISCRETION. ·

*An appellate court has no right to substitute its judgment for that of an examining magistrate merely because it does not agree with his findings; a magistrate's determination that there was probable cause to bind a defendant over for trial must be upheld on appeal where he has not clearly abused his discretion.*

12. HOMICIDE—MANSLAUGHTER—PRELIMINARY EXAMINATION—ELEMENTS OF CRIME—LEGAL JUSTIFICATION—APPEAL AND ERROR—RECORD—CONTRADICTING EVIDENCE—ABUSE OF DISCRETION.

*A defendant charged with manslaughter who failed to dispute at his preliminary examination any elements of the crime charged except the element of legal justification in taking the victim's life was properly bound over for trial on the charge where the record shows that evidence was presented to contradict that defense; as a jury question was thus presented, the court*

*reviewing the magistrate's determination did not abuse its discretion in refusing to reverse the finding below.*

13. CONSTITUTIONAL LAW—EQUAL JUSTICE—POLICE—PRIVILEGED IM-
MUNITY—PROCEDURAL SAFEGUARDS—TRIAL—SPECIAL CONSIDER-
ATIONS.

*Equal justice under law is not advanced by granting law enforce-
ment officers a privileged immunity from prosecution under
standards unavailable to the ordinary citizen; no substantive or
procedural safeguards would be denied to a defendant police
officer if he were required to wait until trial to present to the
trier of fact, if he so desired, the defense that he bears a
greater responsibility in terms of law enforcement than the
ordinary citizen and is confronted with difficult tasks in the
performance of his duty.*

Appeal from Recorder's Court of Detroit, Thomas L. Poindexter, J. Submitted April 7, 1977, at Detroit. (Docket No. 30058.) Decided September 21, 1977.

Willie Doss was charged with manslaughter and bound over for trial at a preliminary examination. Defendant moved to quash the information at a pretrial hearing. Motion denied. Defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Ronald P. Weitzman,* Assistant Prosecuting Attorney, for the people.

*Lippitt, Perlove, Varga & Zack,* for defendant on appeal.

Before: BEASLEY, P. J., and J. H. GILLIS and N. J. KAUFMAN, JJ.

BEASLEY, J. In this case defendant, a Detroit police officer, was charged with manslaughter under MCLA 750.329; MSA 28.561, when he shot and killed a suspect at the scene of a breaking and entering. After preliminary examination, he was bound over for trial. Defendant than moved to quash the information before the judge assigned to handle the pretrial hearing.

In Detroit Recorder's Court the judges act as magistrates in conducting hearings for preliminary examination, but where appeal is sought from a decision whether or not to bind over for trial, that appeal is heard by another Recorder's Court judge.[1] This practice, which has found approval by the Supreme Court, does not come under the usual rule which precludes a judge of one jurisdiction from hearing an appeal from a decision of another judge enjoying coordinate jurisdiction.[2] The justification for the rule in Recorder's Court is that the judges are occupying different roles; in the one instance, acting as magistrates, and in the other, as felony trial judges. Consequently, we consider that Recorder's Court Judge Poindexter acted in an appellate capacity when called upon to rule on defendant's motion to quash the information after bind-over for trial by Recorder's Court Judge Ravitz. For Judge Poindexter, the test was whether there was an abuse of discretion in the bind-over.

The motion to quash was denied, the judge saying that he believed he was bound to deny the motion under the rulings of this Court. He specifi-

---

[1] The procedural trend is away from use of the cumbersome, unwieldy writ of superintending control where, in reality, appeal is sought. *See, People v McCoy*, 75 Mich App 164; 254 NW2d 859 (1977).

[2] *People v Cason*, 387 Mich 586; 198 NW2d 292 (1972).

cally referred to *People v Martin*[3] which was later overruled by the Supreme Court on other grounds.

Defendant filed a petition in this Court for leave to appeal from the order denying the motion to quash, which petition was granted.

The transcript indicates that in responding to an alarm report at a gasoline station, defendant and two other plainclothes officers in an unmarked car arrested a suspect who was on his way out of the gasoline station through a broken window. The officers believed there might be an accomplice and, in answer to an officer's question, the arrested suspect said that he did have a partner, that he did not know where his partner was, but that the partner lived around the corner. Accompanied by three other plainclothes officers who had then arrived at the scene, all of the officers, except the one watching over the arrested suspect, undertook a search of the premises. The search revealed that an axe apparently had been used to break in and to damage some of the station's interior. Seven to ten minutes after the search began, but while the search was continuing, the decedent walked out from behind the gasoline station. The transcript indicates decedent was 21 years old, 5 feet 11 inches tall and weighed 215 pounds. When decedent appeared, defendant immediately moved towards him, followed by a female officer. One officer testified defendant called out, "Detroit Police Officer", while another said she heard defendant say, "stop" or "hold it". When he did not stop, but continued walking west, defendant attempted to encircle the presumed accomplice. As the presumed accomplice neared the service drive on the east side of the I-75 Expressway with defendant in

---

[3] *People v Martin*, 59 Mich App 471; 229 NW2d 809 (1975), was expressly overruled in *Jackson County Prosecutor v Court of Appeals*, 394 Mich 527; 232 NW2d 172 (1975), on procedural grounds.

pursuit, he turned with a long object in his hands, which was subsequently described as part of a chair leg. Defendant then ducked and fired one shot, hitting the presumed accomplice. The testimony of the medical examiner indicated that the cause of his death was a gunshot wound, the bullet entering the back of the head, traveling upwards and exiting to the left side of the front of the head. The medical examiner also testified that there were no powder burns and no other evidence of close range firing.[4] He also testified the blood alcohol content of the accomplice-victim was .22 percent and that this level indicates being under the influence of alcohol.

At the preliminary examination, Judge Ravitz, acting in the capacity of a magistrate, made the following findings of fact:[5]

"Gentlemen, based upon the record before me, the Court is satisfied that the prosecution has made out the crime charged, that being manslaughter, and probable cause to believe that the offense was committed by Mr. Doss. Accordingly, I will bind him over for trial on the charges contained in the complaint and warrant. * * * I am prepared to say this: that there are numerous

[4] The sequence of questions is such that it is unclear whether the examiner considered the bullet path itself evidence of close range firing. The bullet entered the back of the head 6-1/2 inches from the top and exited the front 2 inches from the top; for a head of normal size, this rise of 4-1/2 inches would require the bullet path to be fairly steeply inclined. If the person's back was to the gun, such a path would evidence close range shooting; a bullet from a greater distance would assume a more horizontal path. Also, if the head was tilted forward, the bullet path would be sharply inclined, even from a greater distance, but the bullet would then exit from the top rather than the front of the head. *See, Fornuto v Police Board of the City of Chicago,* 38 Ill App 3d 950, 956; 349 NE2d 521, 526 (1976).

[5] Since the magistrate reopened the preliminary examination on request of defense counsel even though he had already ruled affirmatively on the prosecutor's motion to bind over, the magistrate's findings of Monday, June 7, 1976, are disregarded and only those on Wednesday, June 9, 1976, as quoted above, are considered.

questions of fact the defense has raised at examination
summations pertaining to self-defense. The Court, based
on all the evidence before it, does not find it to be a
*lawful* killing. Once you keep in mind the elements of
manslaughter do not include malice, expressed or im-
plied, do not include premeditation. I am satisfied from
all the evidence I have heard including the evidence
with respect to the nature of the wound in the wound
track, including the evidence with respect to the lapse
of time from the entry by the police into the premises
of the gas station until the time when this gentleman
was seen near the vicinity where he was shot, that the
matters raised before me do make out the crime
charged, understanding that there are a lot of questions
of fact among them being self-defense. I could speak at
greater length, but I decline to do so. Thank you. Bond
will be continued and I will draw a judge for you."
(Emphasis added.)

As has been noted, Judge Poindexter reviewed
these findings on a motion to quash and his com-
ments reflect a different emphasis regarding the
evidence and its effect:

"This Court can only state in this regard that while
this Court would rather be the trial judge in this case,
in which case this Court would be more adequately able
to dispose of this issue, it has been held in a number of
recent cases that it is not the law that the people must
disprove self-defense where there are no facts which
raise the issue, and a preliminary examination is not a
trial. It was so held in a recent case, *People v Martin,*
59 Mich App 471 (1975) where Judge Crockett made the
ruling that this Court would like to make in this case
(in other words, he dismissed the case), but the prosecu-
tion appealed to the Court of Appeals which reversed
Judge Crockett and reinstated the case. This Court had
one prior occasion where this Court was required to
apply this rule and this Court can only say that this
Court feels bound by the decision of the Court of
Appeals, even though this Court does not agree with

the reasoning therein. The motion to quash the information is, accordingly, denied."

The issue on appeal is whether the Recorder's Court judge erred when he refused to quash the information and thus, in effect, held that the magistrate had not abused his discretion in binding defendant over for trial. We hold that such error was committed because the evidence presented at the preliminary examination both negatives application of the statute under which defendant is charged and does not show that defendant caused the death without lawful justification or excuse.

In this case, defendant police officer is charged under a statute which provides as follows:

"329. Any person who shall wound, maim or injure any other person by the discharge of any firearm pointed or aimed, intentionally but without malice, at any such person shall, if death ensue from such wounding, maiming, or injury be deemed guilty of the crime of manslaughter." MCLA 750.329; MSA 28.561.

In Michigan, the offense of common-law manslaughter continues to be recognized, MCLA 750.321; MSA 28.553, also *People v Clark,* 5 Mich App 672; 147 NW2d 704 (1967). However, by statute, various criminal acts are defined to be manslaughter in addition to those recognized at the common law, MCLA 750.322; MSA 28.554, unlawful killing of an unborn child, MCLA 750.236; MSA 28.433, spring gun, trap or device, MCLA 750.329; MSA 28.561, *supra, People v Townes,* 391 Mich 578, 588; 218 NW2d 136 (1974).

The statute under which defendant is here charged is one of a series of statutes concerned with the reckless use of firearms. MCLA 750.329;

MSA 28.561.[6] In Gillespie's Michigan Criminal Law and Procedure, reference is had to this statute as follows:

"This offense is purely statutory. The statute was designed to punish the careless use of firearms when no mischief was designed. The absence of malice is as necessary an ingredient in the statutory definition as is the use of firearms." 3 Gillespie, Michigan Criminal Law and Procedure (2d Ed), § 1663, p 2006.

The history of the statute (now § 329) indicates it was the third of four sections of 1869 PA 68 which was entitled, "An act to prevent the careless use of firearms", and was compiled as §§ 9110–9113 of Howell's Statutes and as §§ 15233–15236 of compiled Laws of 1915, as §§ 16777–16780 of the 1929 Compiled Laws. In compiling the 1948 Criminal Code sections, the section corresponding to present § 329 was slightly rewritten and placed in Chapter XLV, homicide, whereas the other sections were retained as §§ 234–236, MCLA 750.234; MSA 28.431, 433 in chapter 37, firearms. The essential terminology of the statute remained the same.

The statute was interpreted in *People v Chappell*, 27 Mich 486 (1873), where defendant was charged with maiming another by discharging a loaded pistol, pointed and aimed intentionally, but without malice, contrary to Compiled Laws of 1871, § 7550. Defendant asked the trial judge to instruct that if he shot with malice he could not be convicted under the statute which he was charged

---

[6] MCLA 750.234; MSA 28.431 concerns discharge of a firearm, without injury to any other person, when the weapon is aimed intentionally, but without malice, at any person. MCLA 750.235; MSA 28.432 is the corresponding section where maiming or injury results; MCLA 752.861; MSA 28.436(21) is the misdemeanor section on careless, reckless or negligent use of firearms.

with violating. The trial court refused and defend-
ant was convicted. The Supreme Court reversed
the conviction and ordered defendant discharged,
saying:

" * * * it is manifestly impossible for an act to be at
the same time malicious and free from malice. The
statute, as before stated, was aimed at acts where no
harm was designed, and proof of malice is not merely
proof of something beyond the statute. It is inconsistent
with the statute in its chief design." *People v Chappell,*
supra, 487.

Although the *Chappell* case concerned the lesser
charge, the statutes are similar and the legal
reasoning of *Chappell* is applicable to this case.
The key concept is that both statutes are designed
to punish acts done carelessly without the inten-
tion of doing harm. In modern parlance, this
means accidental firing of a firearm without intent
to fire a bullet at the person aimed at.

Another case which supports this reasoning is
*People v McCully,* 107 Mich 343; 65 NW 234
(1895). There, the defendant was convicted of vio-
lating § 9111, 2 Howell's Statutes, "which provides
that any person who shall discharge, without in-
jury to any person, any firearm, while intention-
ally, without malice, aimed toward any person,
shall be guilty of a misdemeanor".

"The court charged the jury that it was an essential
ingredient of the offense that the absence of malice be
shown. *Respondent's counsel asked that the jury be
instructed to find a verdict for the respondent, on the
ground that the evidence of the prosecution tended to
show that there was malice.*

A careful examination of the record convinces us that
the instruction should have been given. The evidence
shows that a feud existed between the complaining

witness and the accused; that the shooting was accompanied by threats; *that the weapon was deliberately aimed at the complaining witness, and deliberately fired.* It was not permissible for the jury to ignore this proof, which was uncontradicted. As was said in *People v Chappell,* 27 Mich 486, this section when construed in connection with the title of the act, which is, 'An act to prevent the careless use of firearms', must be held to have been designed to punish acts done carelessly, without design of doing mischief. We feel constrained to hold that that case rules the present." 107 Mich 343, 344. (Emphasis added.)

The statute has been construed many times, always in accordance with *People v Chappell, supra.* In *People v Peterson,* 166 Mich 10, 13; 131 NW 153 (1911), the defendant was accused of violation of § 1 of 1869 PA 68, discharging a revolver while intentionally, without malice, aimed at certain persons. Evidence showed that he yelled at four persons on the street, entered his shop and came back with pistol in hand. He chased them, fell down and fired after them. He appeared to be intoxicated. The Supreme Court reversed the conviction, citing *Chappell* and noting:

"The evidence all tended to show malice and ill will on the part of respondent, and we think that the motion to discharge the respondent should have been granted." See also, *People v Heikkala,* 226 Mich 332, 337; 197 NW 366 (1924), and *People v Fountain,* 43 Mich App 489, 499; 204 NW2d 532 (1972).

Perhaps the part of the statute which has been misleading and has caused confusion is the phrase, "without malice". That phrase in the law has been given a much broader meaning than "evil intent". It was defined as follows by the Supreme Court in *People v Hansen,* 368 Mich 344, 350; 118 NW2d 422 (1962):

"Malice requires *an intent to cause the very harm that results* or some harm of the same general nature, or an act done in wanton or willful disregard of the plain and strong likelihood that some such harm will result. It requires also on the negative side the absence of any circumstance of justification, excuse, or recognized mitigation."

In *People v Morrin,* this Court stated:

"Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter. * * * Malice in its common acceptation, means ill will towards some person. In its legal sense, it applies to a wrongful act committed intentionally against that person, without legal justification or excuse." *People v Morrin,* 31 Mich App 301, 310–311, and fn 10; 187 NW2d 434 (1971). (Emphasis added.)

The common sense of all this is that § 329 was designed to apply in cases of the careless use of firearms, where the accused intended to aim at the victim, but accidentally fired. There is serious question whether § 329 and the other careless use of firearms statutes were ever intended to apply to police officers. It is expected and it is lawful for police officers, as distinguished from private citizens, to carry guns, to draw guns, to point guns at suspected lawbreakers, etc. This is *not* to say there is no limitation on such right of police officers, but it is to say that insofar as police officers are concerned there are substantial exceptions to the wholesale application of § 329 to police conduct. In this case, the evidence at preliminary examination does not indicate the gun was accidentally fired. The evidence appears to indicate defendant intended to fire the gun and that he hit what he

aimed 'at. As in *People v Chappell, supra,* the testimony presented to the magistrate "tended to show that the weapon was used either justifiably *(i.e.,* in self-defense or to apprehend a fleeing felon), or with a criminal intent and maliciously". In either event, those proofs would not support a bind-over under the statute defendant is charged with violating. As in *People v McCully, supra,* the evidence shows that "the weapon was deliberately aimed at the complaining witness, and deliberately fired". At the moment defendant pulled the trigger, he intended "to cause the very harm". that resulted. There is no evidence to support a finding that the death resulted from the careless use of firearms, that the shot was fired accidentally, or that defendant did not intend to harm the decedent. If defendant broke the law, this is simply the wrong statute. It does not fit the facts of this case. As used in this statute, malice means *intent to* kill, but not under circumstances of excuse, justification or mitigation.[7] An essential element of the statute under which defendant is charged is the *absence* of malice, or intent to kill, and it is missing and has not been proved. Therefore, on the evidence adduced at the preliminary examination, it was error to bind defendant over for trial on a charge of violating § 329.

Implicit in the preceding analysis is the second reason why the motion to quash should have been granted. Our review of the statute shows that it should not be applied to a policeman acting properly within the scope of his duties. In the same way, the special rights and duties of policemen must be kept in mind when related criminal prosecutions are instituted against policemen.

---

[7] *People v Morrin,* 31 Mich App 301, 314 n 17; 187 NW2d 434 (1971).

The special situation of a policeman is made evident by the facts and ruling of an early case in which a policeman, wounding a person whom he was arresting, was charged with assault with a deadly weapon:

" 'I walked within ten or twelve feet of White, and said, "I have a warrant for you; consider yourself under arrest". He got up with his open knife in his hand, and I said, "Put up your knife and consider yourself under arrest". He said, "damn you and your warrant, too; take your hand off your gun". I again told him I had the warrant and to consider himself under arrest. He again replied, "damn you and your warrant both; take your hand off your gun". He then advanced towards me about one step with his knife open in his hand, and drawn back in the attitude of striking. He did not get in striking distance of me; an open door opening on the street was behind me, and there was nothing to keep me from going out of it. If I had stepped out of this door he could not have hurt me, but I did not go out of door because I did not want to run. The warrant I had for his arrest charged disorderly conduct, or a misdemeanor.' "

"[1] And on this evidence we are of opinion that there was error in holding the defendant guilty as a conclusion of law.

"It is a principle very generally accepted that an officer, having the right to arrest an offender, may use such force as is necessary to effect his purpose, and to a great extent he is made the judge of the degree of force that may be properly exerted. Called on to deal with violators of the law, and not infrequently to act in the presence of conditions importing serious menace, his conduct in such circumstance is not to be harshly judged, and, if he is withstood, his authority and purpose being made known, he may use the force necessary to overcome resistance, and to the extent of taking life, if that is required for the proper and efficient performance of his duty. It is when excessive force has been used maliciously, or to such a degree as amounts to a wanton abuse of authority, that criminal liability will

be imputed. The same rule prevails when an officer has a prisoner under lawful arrest, and the latter makes forcible effort to free himself; and, in this jurisdiction, the position holds whether the offense charged be a felony or a misdemeanor, the governing principle being based on the unwarranted resistance to lawful authority, and not dependent, therefore, on the grade of the offense." *State v Dunning.*[8]

The same has been recognized more recently in the context of judicial review of a police board's administrative hearing:

"We also are of the opinion that the shooting could be justified for two other reasons: that under the circumstances Officer Fornuto reasonably believed it was necessary to use force likely to cause death or great bodily harm in order to stop the escape of a person who had committed a forcible felony or who was attempting to escape by employing a deadly weapon.

\* \* \*

"The Police Board argues that even if this was true, the shooting was not necessary to prevent Smith's escape. The Board suggests that Officer Fornuto should have fired a warning shot first. We do not agree. Officer Fornuto had already pursued Smith on foot and shouted, 'Halt, police' and Smith had given no indication he was going to submit to arrest. Instead, Smith had lunged at Officer Fornuto with a knife. A warning shot was unnecessary to inform Smith that Officer Fornuto had his gun drawn, as Smith had already lunged at Fornuto with a knife while Fornuto was holding his gun out. We are of the opinion that Officer Fornuto had expended all reasonable alternatives to prevent Smith's escape by nonviolent means, and therefore reasonably believed that it was necessary to use force likely to cause death or great bodily harm to prevent the escape of a fleeing felon who was attempting to escape by the use of a deadly weapon." [9]

---

[8] *State v Dunning,* 177 NC 559, 562; 98 SE 530, 531 (1919).

[9] *Fornuto v Police Board of the City of Chicago,* 38 Ill App 3d 950, 956–957; 349 NE2d 521, 527 (1976).

In that case there were also some conflicts in the testimony concerning the distance between the parties; some testimony placed the parties only two to three feet apart, while other testimony could have placed them as much as 15 feet apart. The court did not find these differences controlling:

"The discrepancies in Fornuto's testimony at trial and his earlier statements merely establish that Smith may have been a step or two further away and that a second or two elapsed after Smith had lunged at him with the knife while Fornuto was cocking his gun.

"This court has stated before that where self-defense is an issue, if a person is in reasonable fear of his life, the passage of one or two seconds during which the cause of the fear abates is normally not enough to hold that person guilty of an unjustified homicide where he would have been justified in using deadly force only a second or two prior." (Citations omitted.) *Fornuto v Police Board of the City of Chicago,* 38 Ill App 3d 950, 956; 349 NE2d 521, 526 (1976).

The proposed Michigan Standard Criminal Jury Instructions for manslaughter set forth as an element of the crime "that the defendant caused the death without lawful justification or excuse".[10] The preceding cases show that this element is all the more important when evaluating the conduct of a policeman in the line of duty.

Moreover, a magistrate at a preliminary examination must require proof the crime itself has been committed. *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953). In the within case, the magistrate appeared to lose sight of the fact that defendant was a police officer. When the special rights and duties of a policeman are kept in mind, the facts of this case do not establish the commission of a crime by defendant.

[10] Proposed Michigan Criminal Jury Instructions, 16:4:06, 16–147.

The defendant here was conducting an on the scene investigation of a felony. The felony, breaking and entering, had been accomplished with an axe which itself could easily be used as a dangerous weapon. During the search for the accomplice of the person caught leaving the station, the decedent suddenly appeared on the scene. Since the defendant had no knowledge of the hole in the fence behind the station, decedent appeared to be coming from the very scene of the felony. The effect of such presence has already been spoken to by this Court:

"While mere presence, even with knowledge that a criminal offense is about to be or is being committed, is not enough to support a conviction of a person as an aider or abettor under the statute (MCLA § 767.39 [Stat Ann 1954 Rev § 28.979]; see *People v Burrell* [1931], 253 Mich 321), such presence is enough to establish probable cause justifying an arrest." [11]

By statute, no warrant is required for the arrest. MCLA 764.15; MSA 28.874.

Defendant sought to make the arrest in accordance with his sworn duty to enforce the law. There is no question in the testimony that the decedent was ordered to stop. Possibly the defendant did not identify himself as a police officer, but such was not necessary in the case of a fleeing subject. MCLA 764.19; MSA 28.878. By all accounts, the decedent did not halt as requested, but instead swung around at the defendant. In decedent's hand was a chair leg that defendant believed to be a weapon and which easily could have been another axe. Defendant's response to this resistance was to shoot. Hindsight might be used to debate

---

[11] *People v Degraffenreid,* 19 Mich App 702, 708, n 2; 173 NW2d 317 (1969).

whether this was the best response, but no evidence was introduced to show that it was an improper one. The test was whether under the circumstances confronting the police officer there was probable cause to believe the suspect had aided in commission of the known felony.[12] To defendant police officer, the scene was a very foggy night in a high crime area in a city beset by violent crime where handguns abound. He was seeking to apprehend, at the site of a personally known breaking and entering with one suspect under arrest, a presumed accomplice who appeared to be about to attack him with what must have appeared a club or to flee from a lawful arrest into the night. No testimony was introduced which would show that the defendant was not simply doing his duty in making a proper arrest. Under such facts, it is unnecessary to decide whether the elements of self-defense were present because the defendant was justified in shooting even in the absence of those elements.[13] The information, therefore, should have been quashed because no crime had been committed.

This does not mean that every homicide committed by a policeman is justifiable. However, it does mean that the prosecution must offer evidence to overcome those rights and duties inherent in the position of a police officer. Absent such a showing, a police officer' should not be subjected to the problems and difficulties inherent in a major criminal prosecution.

As indicated, it is unnecessary to decide the question whether when a police officer is assaulted and uses his gun and is then charged with manslaughter, the prosecution must prove as part of

---

[12] *People v Harper,* 365 Mich 494, 501; 113 NW2d 808 (1962).

[13] 1 Warren on Homicide (Permanent Edition), § 145, pp 623–624.

the corpus delicti that the police officer was *not* acting in self-defense. However, with respect to that topic, it should be remembered that a police officer is not required or expected to retreat. A police officer has a duty to use reasonable force, including the obligation to counter major force with major force, even at the risk of his life, in order to carry out the responsibilities of his job. Thus, the law of self-defense involves different considerations for a police officer in the course of his duty than for a private citizen. If it were necessary to decide the self-defense issue, I would hold that where a police officer is assaulted and uses his gun that the burden of proof fell on the prosecution to establish by evidence that the police officer was not acting in self-defense in order to justify binding the officer over for trial. While this view does not condone either trigger-happy conduct or too quick use of firearms by police officers, the realities of police work are considered.

The order denying the motion to quash is reversed.

J. H. GILLIS, J., concurred.

N. J. KAUFMAN, J. *(dissenting).* I respectfully dissent.

The facts elicited at preliminary examination indicate that the deceased was shot in the head, apparently while turning, carrying a long object in his hand. A fellow officer testified that defendant was about one foot away from the deceased at the time the shooting took place, although there is no other evidence of close range firing.

Defendant was charged with manslaughter under MCLA 750.329; MSA 28.561:

"Any person who shall wound, maim or injure any

other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter."

This Court has clearly set forth the standard to be used by an examining magistrate in determining if a crime has been committed. In *People v Flint Municipal Judge,* 41 Mich App 766, 769–770; 201 NW2d 111 (1972), this Court held:

"Under the statute, MCLA 766.13; MSA 28.931, the magistrate at the preliminary examination must determine that the offense charged has been committed and that there is probable cause to believe that the defendant is guilty. The matter of 'probable cause' has reference to the connection of the defendant with the alleged offense rather than to the *corpus delicti. Something more than a finding of probable cause is required insofar as the commission of the crime charged is concerned. People v Asta,* 337 Mich 590 [60 NW2d 472] (1953)." (Emphasis added.)

See also *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976), holding:

"It is axiomatic that at the preliminary examination the prosecutor must show that the offense charged has been committed. *While positive proof of guilt is not required, People v Martinovich,* 18 Mich App 253, 257; 170 NW2d 899 (1969), *there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. * * * . People v Juniel,* 62 Mich App 529, 536; 233 NW2d 635 (1975)." (Emphasis added.)

Defendant was bound over on that charge, and a motion to quash the information was denied. The standard to be observed by the reviewing court is

set forth in *People v Flint Municipal Judge, supra,* at 770–771:

"A circuit court is no more at liberty than is this Court or the Supreme Court to substitute its judgment for that of the magistrate. We do not weigh the evidence to determine the facts, but we do examine it to determine whether it justifies the action of the circuit court in holding that the magistrate was guilty of an abuse of discretion. *People v Karcher,* 322 Mich 158 [33 NW2d 744] (1948)."

The ruling of the reviewing court in this case, thus, can be overturned by this Court only if this Court finds that the reviewing court abused its discretion in finding that the examining magistrate did not abuse his discretion. As noted in *People v Dellabonda,* 265 Mich 486, 491; 251 NW 594 (1933):

"Primarily the question of probable cause is for the consideration of and determination by the examining magistrate. This Court may not agree with the findings of such magistrate but it has no right to substitute its judgment for his except in case of a clear abuse of discretion."

The elements of manslaughter under MCLA 750.329; MSA 28.561 are as follows: (1) that the deceased died on or about a date; (2) that the death was caused by an act of the defendant; (3) that the defendant caused the death without lawful justification or excuse; (4) that death resulted from the discharge of a firearm; (5) that at the time of such discharge, the defendant was pointing or aiming the firearm at the deceased; and (6) that at the time of such discharge, the defendant in-

tended to point or aim the firearm at the deceased.[1]

Defendant only disputes the existence of the third element, claiming legal justification in taking the victim's life because he was a police officer and the killing took place while he was investigating a breaking-and-entering of a business. I find that the preliminary examination record contains evidence that contradicts that defense.[2] I would further hold that, as a jury question was thus presented, Judge Poindexter did not abuse his discretion in refusing to quash Judge Ravitz's "bind-over" of defendant.[3]

Finally, I would note that equal justice under law, the cornerstone of our jurisprudential system, is not advanced by granting law enforcement officers a privileged immunity from prosecution, under standards unavailable to the ordinary citizen; the delicate balance between law and order mandates greater caution. Police do have greater responsibilities, in terms of law enforcement, than the citizenry at large. But I submit that the law already affords them the exceptions necessary to carry out their function.[4] I, too, sympathize with

---

[1] *See* Michigan Standard Criminal Jury Instructions (CJI), 16:1:21.

[2] The deceased did not appear at the scene until between five and ten minutes after the police arrived. The deceased came from an area that had already been searched. All the police officers were in plainclothes and in unmarked cars. The killing took place on a very foggy spring evening. An officer who was near the defendant did not hear him identify himself as a police officer to the deceased. The deceased was walking at a normal pace when he first appeared and did not change his pace.

[3] *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), casts considerable doubt upon the continued vitality of the citations of the majority for the proposition that the absence of malice is a necessary element of the offense with which defendant is charged. The Supreme Court held: "Elements are, by definition, positive. A negative element of a crime is a contradiction in terms." 395 Mich at 424. Therefore, a finding of no legal justification or excuse in no way precludes prosecution under this statute. *See, generally, Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972).

[4] For example, only a law-enforcement officer can use deadly force

the difficult tasks confronting police officers. However, it should be remembered that defendant can, at trial, apprise the trier of fact of those considerations and raise any other defense relevant. to the facts. No substantive or procedural safeguards would be denied to defendant.

For the reasons stated above, I would affirm.

---

to apprehend a person suspected of committing a felony *not* in the presence of that official. Furthermore, the "retreat" element of self-defense is inapplicable to police.